1    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     WYNTER L. DEAGLE, Cal Bar No. 296501
2    wdeagle@sheppardmullin.com
     12275 El Camino Real, Suite 100
3    San Diego, California 92130-4092
     Telephone:      858.720.8900
4    Facsimile:      858.509.3691

5

6    Attorneys for Defendant
     Kaiser Foundation Health Plan, Inc.

7

8                    UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11   CHRISTOPHER NEWTON, CHRISTA          Case No.  3:24-cv-03625
     VITAL, SCOTT SCHUTZA on behalf of
12   themselves and all others similarly situated,   Removed from Alameda Superior Court,
                                                       Case No. 24CV073453
13                   Plaintiffs,
                                             **NOTICE OF REMOVAL OF CIVIL
14            v.                             ACTION**

15
     KAISER FOUNDATION HEALTH PLAN,        *Filed concurrently with Declaration of Wynter
16   INC., a California Corporation; META   L. Deagle*
     PLATFORMS INC., a Delaware Corporation;
17   GOOGLE LLC, a Delaware Limited Liability   **CLASS ACTION**
     Company, and DOES 1 through 100,
18   inclusive,                             Trial Date:          Not Set

19                   Defendants.

20

21

22

23

24

25

26

27

28

TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND ALL PARTIES AND THEIR ATTORNEY OF RECORD:

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, Defendant Kaiser Foundation Health Plan, Inc. ("Defendant" or "Kaiser") hereby removes the action *Christopher Newton, et al. v. Kaiser Foundation Health Plan, Inc., et al.*, pending in the Superior Court of the State of California, County of Alameda, Case No. 24CV073453, to the United States District Court for the Northern District of California.

Removal is based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. Sections 1332(d), 1441(b) and 1446.

This Court has original jurisdiction pursuant to the CAFA, 28 U.S.C. 1332(d), because: (1) the proposed class contains at least 100 members; (2) Kaiser is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000 in the aggregate, exclusive of interest and costs; and (4) minimal diversity exists between the parties.

## I.    BACKGROUND

1.    On April 29, 2024, Christopher Newton, Christa Vital, and Scott Schutza ("Plaintiffs") commenced this action by filing a Complaint against Kaiser in the Superior Court of the State of California, County of Alameda styled *Christopher Newton, et al. v. Kaiser Foundation Health Plan, Inc., et al.*, Case No. 24CV073453.

2.    Kaiser was served with a Summons and copy of the Complaint on May 15, 2024. Declaration of Wynter L. Deagle in Support of Defendant Defendant's Notice of Removal ("Deagle Decl."), ¶ 5, Exh. A, B.

3.    On June 10, 2024, Plaintiffs filed an amended complaint, the First Amended Class Action Complaint ("FAC") that added META PLATFORMS, INC ("Meta") and GOOGLE LLC ("Google") as named co-defendants.  Deagle Decl. ¶ 6, Exh. C.

4.    Plaintiffs' Complaint was styled as a putative class action under California Code of Civil Procedure Section 382, and brought on behalf of themselves and "a putative class defined as, 'All natural persons in the United States who used the Kaiser Platform and whose communications

and/or data were intercepted by Defendants, and who received a Notice of Data Breach in May of 2024.'" FAC ¶ 3.

5.      In sum, Plaintiffs allege that Kaiser allowed Plaintiffs' information to be disclosed to unauthorized third-party vendors through Kaiser's use and implementation of the vendors' online technologies on an undefined "Kaiser Platform." *See* FAC ¶¶ 4–6.  Specifically, Plaintiffs contend that Kaiser incorporated technology from Meta and Google that captured certain information from Plaintiffs during Plaintiffs' use of the Kaiser Platform. *Id*. at 6.  Plaintiffs also allege their information was disclosed to X (formerly Twitter) during their use of the Kaiser Platform. *Id*. ¶ 27.[1]  On this basis, Plaintiffs claim these disclosures violated Kaiser's duties under HIPAA and certain state laws.  *Id*. ¶¶ 50–67.  The FAC brings causes of action (1) under the California Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq*; (2) under California Unfair Competition Law, Cal Bus, & Prof. Code § 17200, *et seq*; (3) claims for negligence; (4) claims for negligence per se; (5) under common law invasion of privacy— intrusion upon seclusion; (6) under California Penal Code § 631; and (7) under California Penal Code § 632.  *See* FAC at 1.

6.      In their Prayer for Relief, Plaintiffs seek an order certifying the action as a class action; monetary relief, including actual and statutory damages, punitive damages, attorneys fees, expenses, and costs; injunctive and equitable relief; class notification costs; and restitution.  *See* FAC at 46–47.

## II.      VENUE

7.      Under 28 U.S.C. §§ 84(a) and 1441(a), venue is proper in the United States District for the Northern District of California because this Court embraces the Superior Court for Alameda County, where this action is pending.

## III.      NOTICE TO SUPERIOR COURT AND PLAINTIFF

8.      In accordance with 28 U.S.C. § 1446(d), Notice of Removal will be promptly served on Plaintiffs and filed with the Clerk of the Superior Court of the State of California for the

---

[1] X is not a party to this suit.

County of Alameda.

9.      In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Kaiser or filed by Kaiser are attached as **Exhibits A through E** to the Declaration of Wynter L. Deagle, filed concurrently herewith.

## IV.      REMOVAL IS TIMELY

10.      Under 28 U.S.C. § 1446(b), "a case may be removed–during the first thirty days after the defendant receives the initial pleading." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005).

11.      This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) because it is being filed within thirty days of May 15, 2024, the date on which Kaiser received the Complaint through service of Summons and a copy of the Complaint.  Deagle Decl. ¶ 5, Exh. B.  This Notice of Removal also is filed within one year of the commencement of this action and is thus also timely pursuant to 28 U.S.C. § 1446(c)(1).

## V.      JOINDER

12.      Under CAFA, a case may be removed by any defendant without the consent of co-defendants. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).

13.      Here, Plaintiffs have brought suit against Kaiser, Meta, and Google. As discussed *infra*, minimal diversity exists between at least one putative class member plaintiff and one defendant, thereby rendering removal proper as to all Defendants.

## VI.      JURISDICTION IS PROPER UNDER CAFA

14.      CAFA was enacted on February 18, 2005.  In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d).

15.      This Court has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the defendant is not

a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member and one defendant.

16.     Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (holding notice of removal "need not contain evidentiary submissions."). Rather, "[a] defendant's notice of removal need include only a plausible allegation." *Id*. at 89. Evidence is required "*only* when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* (emphasis added); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) (finding courts may not remand where notice of removal plausibly alleges the basis for removal, without giving the defendant an opportunity to prove the jurisdictional requirements are satisfied).

17.     The United States Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that CAFA "should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee*, 574 U.S. at 89. Following *Dart Cherokee*, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 broadly in favor of removal . . . ." *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1184 (9th Cir. 2015); *see also Ibarra v. Manheim Invs., Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively."); *Bridewell-Sledge v. Blue Cross*, 798 F.3d 923, 929 (9th Cir. 2015) (finding, under *Dart Cherokee*, that district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction.'"); *Moppin v. Los Robles Reg'l Med. Ctr*., 2015 WL 5618872, at *2 (C.D. Cal. Sept. 12, 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

18.     As set forth below, this action satisfies each of the requirements of Section 1332(d)(2) for original jurisdiction under CAFA.

**A.      This is a Class Action with a Putative Class of at Least 100 Members and None of the Defendants are States, State Officials, or Government Entities**

19.     This action meets CAFA's definition of a class action, which is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §§ 1332(d)(1)(B), 1435(a) & (b). This action has been brought on behalf of a nationwide class, FAC ¶ 3, and styled as a California class action pursuant to California Code of Civil Procedure § 382. FAC at 46. Plaintiffs identify the putative class as, "[a]ll natural persons in the United States who used the Kaiser Platform and whose communications and/or data were intercepted by Defendants, and who received a Notice of Data Breach in May of 2024." FAC ¶ 3.

20.     28 U.S.C. § 1332(d)(5) excludes from CAFA jurisdiction cases in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or . . . the number of members of all proposed plaintiff classes in the aggregate is less than 100."

21.     Kaiser is a California corporation. FAC ¶ 16. It is not a state, a state official, or a government entity.

22.     The Complaint alleges that Plaintiff believes the number of potential class members is "so numerous that joinder of all members is impracticable" and may be as high as 13.4 million individuals. FAC ¶ 144. Therefore, Plaintiffs' proposed class consists of at least 100 members both now at the time of removal and at the institution of this civil action, as required by 28 U.S.C. § 1332 (d)(5)(B).

**B.      The Parties Are Minimally Diverse**

23.     CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d). This requirement is easily satisfied here.

24.    An individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). No evidence of domicile is required at the notice of removal stage. *See Dart Cherokee*, 574 U.S. at 84. Indeed, a mere allegation of the parties' citizenship is sufficient for removal. *Ehrman v. Cox Communs., Inc.,* 932 F.3d 1223, 1227 (9th Cir. 2019).

25.    The named Plaintiffs allege that they reside in California. FAC ¶ 12–14. However, Plaintiffs' alleged putative class is a nationwide class. *Id*. ¶ 3. Plaintiffs' FAC contemplates certain members of the putative class reside outside of California. *Id*. ¶ 144. Kaiser serves individuals in the following states: Colorado, Georgia, Hawaii, Maryland, Oregon, Virginia, Washington, and the District of Columbia that also used the Kaiser Platform. Therefore, there are purported class members who are not California citizens.

26.    A corporation is deemed to be a citizen of every state by which it has been incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009).

27.    The Plaintiffs have specified the citizenship of the Defendants as follows: (1) Kaiser is a California corporation with its principal place of business in California; (2) Meta is a Delaware corporation with its principal place of business in California; and (3) Google is a Delaware limited liability company with its principal place of business in California. FAC ¶¶ 16–17, 23.

28.    Given these allegations, the criteria for minimal diversity under CAFA is met. There is at least one putative class member plaintiff who is a citizen of a different state than any of the Defendants. The alleged members of the nationwide class who are not from California reside across a range of states, including Colorado, Georgia, Hawaii, Maryland, Oregon, Virginia, Washington, and the District of Columbia, while the Defendants' citizenship is confined to California and Delaware. Consequently, minimal diversity exists because at least one putative class member plaintiff is from a state in which none of the Defendants claim citizenship.

/ / /

/ / /

**C.    The Aggregate Amount In Controversy Exceeds $5,000,000**

29.    Without making any admission of liability or damages with respect to any aspects of this case, or the proper legal test(s) applicable to Plaintiffs' allegations on behalf of themselves and the putative class, the amount that has been placed in controversy by Plaintiffs exceed the jurisdictional minimum of this Court, $5,000,000.

30.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. Moreover, a defendant need not set forth evidence establishing the amount in its notice of removal. *Id.* A defendant is not obliged to "research, state, and prove the plaintiff's claim for damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994).

31.    Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2), (d)(6); *see also Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 684 (9th Cir. 2006).

32.    The amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability." *Lewis v. Verizon Comms., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). To determine the amount in controversy, the Court must assume that the allegations in the operative pleading are true and that a jury will return a verdict for the plaintiff on all such claims. *See Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." (emphasis and quotation marks omitted)).

33.    Plaintiffs allege that all Defendants have violated the Confidentiality of Medical Information Act ("CMIA") and Plaintiffs are entitled to nominal damages in the amount $1,000 per violation under Civil Code § 56.36(b)(1). FAC ¶¶ 154–161. With allegations alleging as many as 13.4 million potential class members, each eligible for $1,000 in nominal damages, the total amount in controversy is asserted to be at least $13.4 billion. *See* FAC ¶ 144.

34.    Further, Plaintiffs bring claims against both Meta and Google for violations of the

California Invasion of Privacy Act ("CIPA") under Cal. Penal Code §§ 631 and 632.  FAC ¶¶ 208–229.  Plaintiffs allege that statutory damages for each of these sections is "the greater of: (1) $5,000 per violation; or (2) three times the amount of damages sustained by Plaintiffs and the Class in an amount to be proven at trial, as well as injunctive or other equitable relief."  *Id.* ¶¶ 218–229.  Assuming the base figure of $5,000 per violation, each class member could potentially claim $10,000 for CIPA violations.  With up to 13.4 million class members involved, the Plaintiffs have placed $134 billion in controversy through their CIPA claims alone.

35.     In total, accounting for both CMIA and CIPA claims, the Plaintiffs have positioned $147.4 billion in controversy, far exceeding the $5,000,000 minimum amount required by CAFA.

36.     For the reasons identified above, CAFA jurisdiction is proper here and this action is removed to federal court in the Northern District of California.

**VII.    <u>CONCLUSION</u>**

37.     For the forgoing reasons, and having provided notice as is required by law, the above-entitled action is removed from the Superior Court for the County of Alameda to the United States District Court for the Northern District of California.

Dated:  June 14, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  _____
                */s/ Wynter L. Deagle*
                WYNTER L. DEAGLE

Attorneys for Defendant
Kaiser Foundation Health Plan, Inc.

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   WYNTER L. DEAGLE, Cal Bar No. 296501
2  wdeagle@sheppardmullin.com
   12275 El Camino Real, Suite 100
3  San Diego, California 92130-4092
   Telephone:    858.720.8900
4  Facsimile:    858.509.3691

5

6  Attorneys for Defendant
   Kaiser Foundation Health Plan, Inc.

7

8                UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11  CHRISTOPHER NEWTON, CHRISTA        | Case No. 3:24-cv-03625
    VITAL, SCOTT SCHUTZA on behalf of  |
12  themselves and all others similarly situated, | Removed from Alameda Superior Court,
                                       | Case No. 24CV073453
13             Plaintiffs,             |
                                       | **DECLARATION OF WYNTER L.**
14        v.                           | **DEAGLE IN SUPPORT OF**
                                       | **DEFENDANT'S NOTICE OF REMOVAL**
15  KAISER FOUNDATION HEALTH PLAN,     | **OF CIVIL ACTION**
    INC., a California Corporation; META |
16  PLATFORMS INC., a Delaware Corporation; | *Filed concurrently with Notice of Removal*
    GOOGLE LLC, a Delaware Limited Liability |
17  Company, and DOES 1 through 100,   | **CLASS ACTION**
    inclusive.                         |
18                                     | Trial Date:          Not Set
               Defendants.            |
19

20

21              **DECLARATION OF WYNTER L. DEAGLE**

22       I, Wynter L. Deagle, declare as follows:

23       1.      I am an attorney duly admitted to practice before this Court.  I am a partner with

24  Sheppard, Mullin, Richter & Hampton LLP, attorneys of record for Defendant Kaiser Foundation

25  Health Plan, Inc. ("Defendant" or "Kaiser").

26       2.      If called as a witness, I could and would competently testify to all facts within my

27  personal knowledge except where stated upon information and belief.

28  / / /

3.      This declaration is submitted in support of Defendant's Notice of Removal of Civil Action.

4.      On April 29, 2024, Plaintiffs Christopher Newton, Christa Vital, and Scott Schutza ("Plaintiffs") filed a Complaint against Kaiser in the Superior Court of the State of California for the County of Alameda (the "Complaint"), entitled *Christopher Newton, et al. v. Kaiser Foundation Health Plan, Inc., et al.*, Case No. 24CV073453 (the "State Court Action"). Attached as **Exhibit A** is a true and correct copy of the Complaint.

5.      Plaintiffs served Kaiser on May 15, 2024 by delivering a copy to Kaiser's agent for service of process. Attached as **Exhibit B** is a true and correct copy of the Summons and the Proof of Service of Summons.

6.      On June 10, 2024, Plaintiffs filed a first amended complaint against Kaiser in the Superior Court of the State of California for the County of Alameda (the "FAC"). Plaintiffs named Meta Platforms, Inc. and Google, LLC as additional defendants and asserted additional causes of action. Attached as **Exhibit C** is a true and correct copy of the FAC.

7.      Plaintiffs served Kaiser on June 10, 2024 by electronically mailing the FAC and Summons to Kaiser's counsel of record. Attached as **Exhibit D** is a true and correct copy of the Summons and proof of service.

8.      Attached as **Exhibits E** are true and correct copies of all other documents filed in the State Court Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 14th day of June, 2024, at San Diego, California.


*/s/ Wynter L. Deagle*
Wynter L. Deagle

# EXHIBIT A

# EXHIBIT A

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**04/29/2024 at 03:12:25 AM**
By: Damaree Franklin,
Deputy Clerk

**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Tel: (415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiffs Christopher Newton, Christa Vital, Scott Schutza, on behalf of themselves and all others similarly situated,

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

24CV073453

| | |
|---|---|
| CHRISTOPHER NEWTON, CHRISTA VITAL, SCOTT SCHUTZA on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | **CLASS ACTION** <br><br> **CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (FOR VIOLATIONS OF:** <br><br> **(1) THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIVIL CODE §§ 56, *ET SEQ*.);** <br> **(2) CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.;*** <br> **(3) NEGLIGENCE; and** <br> **(4) NEGLIGENCE PER SE.** <br><br> **DEMAND FOR JURY TRIAL** |

Class Action Complaint

1       Class Representative Plaintiffs Christopher Newton, Christa Vital, and Scott Schutza

2 ("Plaintiffs"), by and through their attorneys, individually and on behalf of others similarly situated,

3 allege upon information and belief as follows:

4 **I.**

5 **INTRODUCTION**

6       1.     Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.*

7 (hereinafter referred to as the "Act"), Plaintiffs Christopher Newton, Christa Vital, Scott Schutza

8 and all other persons similarly situated, had a right to keep their personal medical information

9 provided to Defendant KAISER FOUNDATION HEALTH PLAN, INC. ("Kaiser" or

10 "Defendant") confidential. The short title of the Act states, "The Legislature hereby finds and

11 declares that persons receiving health care services have a right to expect that the confidentiality

12 of individual identifiable medical information derived by health service providers be reasonably

13 preserved. It is the intention of the Legislature in enacting this act, to provide for the

14 confidentiality of individually identifiable medical information, while permitting certain

15 reasonable and limited uses of that information." The Act specifically provides that "a provider of

16 health care, health care service plan, or contractor shall not disclose medical information regarding

17 a patient of the provider of health care or an enrollee or subscriber of a health care service plan

18 without first obtaining an authorization...." Civil Code. § 56.10(a). The Act further provides that

19 "Every provider of health care, health care service plan, pharmaceutical company, or contractor

20 who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall

21 do so in a manner that preserves the confidentiality of the information contained therein. Any

22 provider of health care, health care service plan, pharmaceutical company, or contractor who

23 negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical

24 records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36."

25 Civil Code § 56.101(a).

26       2.     Civil Code § 56.36(b) provides Plaintiffs, and all other persons similarly situated,

27 with a private right to bring an action against Defendant for violation of Civil Code § 56.101 by

28 specifically providing that "[i]n addition to any other remedies available at law, any individual may

1

1  bring an action against any person or entity who has negligently released confidential information

2  or records concerning him or her in violation of this part, for either or both of the following: (1) ...

3  nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, *it shall*

4  *not be necessary that the plaintiff suffered or was threatened with actual damages.* (2) The amount

5  of actual damages, if any, sustained by the patient." (Emphasis added.) Here, the release of

6  information to third parties without so much as a subpoena clearly violates the requirements of this

7  statute.

8      3.      This class action is brought on behalf of Plaintiffs and a putative class defined as all

9  patients of Defendant who received treatment at one of Defendant's hospital, satellite, or urgent care

10  locations and whose personal medical information were released to third parties without

11  authorization ("the "Class," or the "Class Members").

12      4.      As alleged more fully below, Defendant created, maintained, preserved, and stored

13  Plaintiffs and the Class members' personal medical information onto the Defendant's computer

14  network, including websites and web applications prior to April 2024. Due to Defendant's

15  intentional release of information without authorization, there was an unauthorized release of

16  Plaintiffs' and the Class members' confidential medical information that occurred continuously

17  from the time this information was provided by the Class to Defendant, in violation of Civil Code §

18  56.101 of the Act.

19      5.      As alleged more fully below, Defendant created, maintained, preserved, and stored

20  Plaintiffs' and the Class members' confidential medical information which were released to

21  unauthorized persons, without Plaintiffs' and the Class members' prior written authorization. This

22  act of providing unauthorized access to Plaintiffs' and the Class Members' confidential medical

23  information continuously constitutes an unauthorized release of confidential medical information in

24  violation of Civil Code § 56.101 of the Act. Because Civil Code § 56.101 allows for the remedies

25  and penalties provided under Civil Code § 56.36(b), Class Representative Plaintiffs, individually

26  and on behalf of others similarly situated, seek nominal damages of one thousand dollars ($1,000)

27  for each violation under Civil Code § 56.36(b)(1). Additionally, Class Representative Plaintiffs,

28

2

1   individually and on behalf of others similarly situated, seek injunctive relief for unlawful violations

2   of Business and Professions Code §§ 17200, *et seq.*

3       6.    Class Representative Plaintiffs do not seek any relief greater than or different from

4   the relief sought for the Class of which Plaintiffs are members. The action, if successful, will enforce

5   an important right affecting the public interest and would confer a significant benefit, whether

6   pecuniary or non-pecuniary, for a large class of persons.   Private enforcement is necessary and

7   places a disproportionate financial burden on Class Representative Plaintiffs in relation to Class

8   Representative Plaintiffs' stake in the matter.

9                                        **II.**

10                          **JURISDICTION AND VENUE**

11      7.    This Court has jurisdiction over this action under California Code of Civil Procedure

12   § 410.10.   The aggregated amount of damages incurred by Plaintiffs and the Class exceeds the

13   $25,000 jurisdictional minimum of this Court.   The amount in controversy as to the Plaintiffs

14   individually and each individual Class member does not exceed $75,000, including interest and any

15   pro rata award of attorneys' fees, costs, and damages.   Venue is proper in this Court under California

16   Bus. & Prof. Code § 17203, Code of Civil Procedure §§ 395(a) and 395.5 because Defendant is

17   registered and does business in the State of California and in the County of Alameda.   Defendant

18   has obtained medical information in the transaction of business in the County of Alameda, which

19   has caused both obligations and liability of Defendant to arise in the County of Alameda.

20                                       **III.**

21                                     **PARTIES**

22   **A.    PLAINTIFFS**

23      8.    Class Representative Plaintiff Christopher Newton is a resident of California.  At all

24   times relevant, Plaintiff was a patient of Defendant who utilized Defendant's website and web

25   application to receive medical treatment medical treatment from Defendant, and was a patient, as

26   defined by Civil Code § 56.05(k). Plaintiff's individual identifiable medical information derived by

27   Defendant in electronic form was in possession of Defendant, including but not limited to Plaintiff's

28   medical history, mental or physical condition, or treatment, including diagnosis and treatment dates.

                                            3

1   Such medical information included or contained an element of personal identifying information
2   sufficient to allow identification of the individual, such as Plaintiff's name, date of birth, addresses,
3   medical record number, insurance provider, electronic mail address, telephone number, or social
4   security number, or other information that, alone or in combination with other publicly available
5   information, reveals Plaintiff's identity.

6       9.    Class Representative Plaintiff Christa Vital is a resident of California. At all times
7   relevant, Plaintiff was a patient of Defendant who utilized Defendant's website and web application
8   to receive medical treatment from Defendant, and was a patient, as defined by Civil Code § 56.05(k).
9   Plaintiff's individual identifiable medical information derived by Defendant in electronic form was
10  in possession of Defendant, including but not limited to Plaintiff's medical history, mental or
11  physical condition, or treatment, including diagnosis and treatment dates. Such medical information
12  included or contained an element of personal identifying information sufficient to allow
13  identification of the individual, such as Plaintiff's name, date of birth, addresses, medical record
14  number, insurance provider, electronic mail address, telephone number, or social security number,
15  or other information that, alone or in combination with other publicly available information, reveals
16  Plaintiff's identity. Since receiving treatment at Defendant's facilities, Plaintiff has received
17  numerous solicitations by mail and phone from third parties at an address and number she only
18  provided to Defendant. She has also begun receiving phone call regarding health issues she and her
19  family have sought treatment for.

20      10.    Class Representative Plaintiff Scott Schutza is a resident of California. At all times
21  relevant, Plaintiff was a patient of Defendant who utilized Defendant's website and web application
22  to receive medical treatment medical treatment from Defendant, and was a patient, as defined by
23  Civil Code § 56.05(k). Plaintiff's individual identifiable medical information derived by Defendant
24  in electronic form was in possession of Defendant, including but not limited to Plaintiff's medical
25  history, mental or physical condition, or treatment, including diagnosis and treatment dates. Such
26  medical information included or contained an element of personal identifying information sufficient
27  to allow identification of the individual, such as Plaintiff's name, date of birth, addresses, medical
28  record number, insurance provider, electronic mail address, telephone number, or social security

1  number, or other information that, alone or in combination with other publicly available information,

2  reveals Plaintiff's identity.

3      11.    On April 26, 2027, Plaintiffs and the Class were informed through an article on

4  various media outlets, such as Techcrunch that their personal medical information and personal

5  identifying information were disclosed to "third-party advertisers, including Google, Microsoft and

6  X (formerly Twitter)."[1] This information was subsequently confirmed by Defendant in its filing

7  with the United States Department of Health and Human Services.

8  **B.    DEFENDANT**

9      12.    Defendant Kaiser Foundation Health Plan, Inc. is a California corporation, with its

10  principal places of business located at One Kaiser Plaza, Oakland, CA 94612. At all times relevant,

11  Defendant is a "provider of health care" as defined by Civil Code § 56.05(m). Prior to April 2024,

12  Defendant created, maintained, preserved, and stored Plaintiffs' and the Class members'

13  individually identifiable medical information onto Defendant's computer network, including but not

14  limited to Plaintiffs' and the Class members' medical history, mental or physical condition, or

15  treatment, including diagnosis and treatment dates. Such medical information included or contained

16  an element of personal identifying information sufficient to allow identification of the individual,

17  such as Plaintiffs' and the Class members' names, dates of birth, addresses, medical record numbers,

18  insurance providers, electronic mail addresses, telephone numbers, or social security numbers, or

19  other information that, alone or in combination with other publicly available information, reveals

20  Plaintiffs' and the Class members' identities.

21  **C.    DOE DEFENDANTS**

22      13.    The true names and capacities, whether individual, corporate, associate, or otherwise,

23  of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the

24  Plaintiffs, who therefore sue the Defendants by such fictitious names under the Code of Civil

25  Procedure § 474. Each of the Defendants designated herein as a DOE is legally responsible in some

26  manner for the unlawful acts referred to herein. Plaintiffs will seek leave of court and/or amend this

27  _____

28  [1] Whittaker, Zack. "Health insurance giant Kaiser will notify millions of a data breach after sharing patients' data with advertisers," https://techcrunch.com/2024/04/25/kaiser-permanente-health-plan-millions-data-breach/ last accessed on April 26, 2024.

5

1  complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES

2  1 through 100 when such identities become known.  Any reference made to a named Defendant by

3  specific name or otherwise, individually or plural, is also a reference to the actions or inactions of

4  DOES 1 through 100, inclusive.

5  **D.    AGENCY/AIDING AND ABETTING**

6     14.    At all times herein mentioned, Defendants, and each of them, were an agent or joint

7  venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the

8  course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the

9  acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized

10  the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

11     15.    Defendants, and each of them, aided and abetted, encouraged and rendered

12  substantial assistance to the other Defendants in breaching their obligations to Plaintiffs and the

13  Class, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially

14  assist the commissions of these wrongful acts and other wrongdoings complained of, each of the

15  Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its

16  conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals,

17  and wrongdoing.

18                                **IV.**

19                        **FACTUAL ALLEGATIONS**

20  **A.    The Unauthorized Release**

21     16.    On April 26, 2027, Plaintiffs and the Class were informed through an article on

22  Techcrunch and other medica outlets that their personal medical information and personal

23  identifying information were disclosed to "third-party advertisers, including Google, Microsoft and

24  X (formerly Twitter)." [2] ("Notice").  At no point had Plaintiffs and the Class provided any

25  authorization to Defendant to release any medical records to any person on their behalf.  Nor was

26  any information sought at this time by any third party by way of a subpoena or request for documents

27  in discovery. ("Data Breach").

28  ───────────────────────
   [2] *Id.*

                                6

Class Action Complaint

17.    The reports further stated that Defendant "conducted an investigation that found "certain online technologies, previously installed on its websites and mobile applications, may have transmitted personal information to third-party vendors.""

18.    The reports also mentioned "that the data shared with advertisers includes member names and IP addresses, as well as information that could indicate if members were signed into a Kaiser Permanente account or service and how members "interacted with and navigated through the website and mobile applications, and search terms used in the health encyclopedia.""

19.    According to the media reports, Defendant "subsequently removed the tracking code from its websites and mobile apps."

20.    Although the reports mentioned that Defendant "filed a legally required notice with the U.S. government on April 12 but made public on Thursday confirming that 13.4 million residents had information exposed," and "notified California's attorney general of the data breach," Defendant's spokesperson confirmed that Defendant has yet to notify the affected individuals. The Notice stated "that the organization would begin notifying 13.4 million affected current and former members and patients who accessed its websites and mobile apps. The notifications will start in May in all markets where Kaiser Permanente operates, the spokesperson said."

21.    As such, Plaintiffs are informed and believe that Defendant regularly gave unrestricted access to third parties to the Personal and Medical Information of Plaintiffs and all Class Members for an undetermined period of time prior to April 2024.

22.    Yet, despite knowing many patients were in danger, Defendant did nothing to warn Class Members. During this time, unauthorized third parties had free reign to surveil and defraud their unsuspecting victims. Defendant proceeded business as usual without giving class members the information they needed to protect themselves against fraud and identity theft.

23.    It is apparent from the reports and subsequent filings with the United States Department of Health and Human Services and the California Attorney General's office, that Defendant stores the personal medical information of the Class Members and released them to unauthorized third parties.

7

24.    Defendant failed to adequately safeguard Plaintiffs and Class Members' Personal and Medical Information, allowing unauthorized third parties to access this wealth of priceless information for an undetermined period of time prior to April 2024, and possibly continuing to date, without warning the victims, the Class Members, to be on the lookout.

25.    Defendant failed to spend sufficient resources on making sure that its patients' personal medical information are secure and released only to authorized persons.

26.    Defendant had obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), the Confidentiality of Medical Information Act ("CMIA"), reasonable industry standards, its own contracts with its patients and employees, common law, and its representations to Plaintiffs and Class members, to keep their Personal and Medical Information confidential and to protect the information from unauthorized access.

27.    Plaintiffs and Class members provided their Personal and Medical Information to Defendant with the reasonable expectation and mutual understanding that it would comply with its obligations to keep such information confidential and secure from unauthorized access.

28.    Indeed, as discussed below, Defendant promised Plaintiffs and Class members that it would do just that.

**B.    Defendant Expressly Promised to Protect Personal and Medical Information**

29.    Defendant provides all patients, including Plaintiffs and Class members, its Notice of Privacy Practices, which states that:

II. ABOUT OUR RESPONSIBILITY TO PROTECT YOUR PHI

By law, we must

1. protect the privacy of your PHI;
2. tell you about your rights and our legal duties with respect to your PHI;
3. notify you if there is a breach of your unsecured PHI; and
4. tell you about our privacy practices and follow our notice currently in effect.
We take these responsibilities seriously and, have put in place administrative safeguards(such as security awareness training and policies and procedures), technical safeguards(such as encryption and passwords), and physical safeguards

8

(such as locked areas and requiring badges) to protect your PHI and, as in the past, we will continue to take appropriate steps to safeguard the privacy of your PHI.[3]

30.    Likewise, Defendant's Notice of Privacy Practices also states that:

VI. ALL OTHER USES AND DISCLOSURES OFYOUR PHI REQUIRE YOUR PRIOR WRITTENAUTHORIZATION

Except for those uses and disclosures described above, we will not use or disclose your PHI without your written authorization. Some instances in which we may request your authorization for use or disclosure of PHI are:

Marketing:
We may ask for your authorization in order to provide information about  products and services that you may be interested in purchasing or using. Note that marketing communications do not include our contacting you with information about treatment alternatives, prescription drugs you are taking or health-related products or services that we offer or that are available only to our health plan enrollees. Marketing also does not include any face-to-face discussions you may have with your providers about products or services.

Sale of PHI:
We may only sell your PHI if we received your prior written authorization to do so.

Psychotherapy Notes:
On rare occasions, we may ask for your authorization to use and disclose "psychotherapy notes". Federal privacy law defines "psychotherapy notes" very specifically to mean notes made by a mental health professional recording conversations during private or group counseling sessions that are maintained separately from the rest of your medical record. Generally, we do not maintain psychotherapy notes, as defined by federal privacy law.

When your authorization is required and you authorize us to use or disclose your PHI for some purpose, you may revoke that authorization by notifying us in writing at any time. Please note that the revocation will not apply to any authorized use or disclosure of your PHI that took place before we received your revocation. Also, if you gave your authorization to secure a policy of insurance, including health care

---

[3] Kaiser, "Notice of Privacy Practices," Effective Date: September 22, 2023, https://healthy.kaiserpermanente.org/southern-california/privacy-practices , last visited on April 26, 2024.

coverage from us, you may not be permitted to revoke it until the insurer can no longer contest the policy issued to you or a claim under the policy.[4]

31.    Notwithstanding the foregoing assurances and promises, Defendant failed to protect the Personal and Medical Information of Plaintiffs and other Class members from releasing their information to unauthorized third parties, as conceded by Defendant in the Notice.

32.    If Defendant truly understood the importance of safeguarding patients' Personal and Medical Information, it would acknowledge its responsibility for the harm it has caused, and would compensate class members, provide long-term protection for Plaintiffs and the Class, agree to Court-ordered and enforceable changes to its policies and procedures, and adopt regular and intensive training to ensure that an unauthorized release like this never happens again.

33.    That information is now in the hands unauthorized third parties who will use it if given the chance. In fact, Plaintiff Vital already has begun receiving direct solicitations and advertisements from third parties regarding medical conditions she sought treatment for. Much of this information is unchangeable and loss of control of this information is remarkably dangerous to consumers.

**C.    Defendant had an Obligation to Protect Personal and Medical Information under Federal and State Law and the Applicable Standard of Care**

34.    Defendant is an entity covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and  Security Rule ("Security Standards for the Protection of Electronic Protected Health Information), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

35.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

36.    HIPAA's Security Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is held or transferred in electronic form.

---

[4] *Id.*

37. HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

38. "Electronic protected health information" is "individually identifiable health information . . . that is (i) Transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

39. HIPAA's Security Rule requires Defendant to do the following:

   a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

   b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

   c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

   d. Ensure compliance by its workforce.

40. HIPAA also required Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

41. HIPAA also required Defendant to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

42. Defendant was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

43.    In addition to their obligations under federal and state laws, Defendant owed a duty to Class Members whose Personal and Medical Information was entrusted to Defendant to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its systems, policies, procedures, and the personnel responsible for them, adequately protected the Personal and Medical Information of the Class Members.

44.    Defendant owed a duty to Class Members whose Personal and Medical Information was entrusted to Defendant to design, maintain, and test its systems, policies, and procedures to ensure that the Personal and Medical Information in Defendant's possession was adequately secured and protected.

45.    Defendant owed a duty to Class Members whose Personal and Medical Information was entrusted to Defendant to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in their possession, including adequately training its employees and others who accessed Personal Information within its computer systems on how to adequately protect Personal and Medical Information.

46.    Defendant owed a duty to Class Members whose Personal and Medical Information was entrusted to Defendant to implement processes that would detect an unauthorized access in a timely manner.

47.    Defendant owed a duty to Class Members whose Personal and Medical Information was entrusted to Defendant to act upon data security warnings and alerts in a timely fashion.

48.    Defendant owed a duty to Class Members whose Personal and Medical Information was entrusted to Defendant to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

49.    Defendant owed a duty to Class Members whose Personal and Medical Information was entrusted to Defendant to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft or access by

12

1    unauthorized third parties because such an inadequacy would be a material fact in the decision to

2    entrust Personal and Medical Information with Defendant.

3        50.    Defendant owed a duty to Class Members whose Personal and Medical Information

4    was entrusted to Defendant to disclose in a timely and accurate manner when an unauthorized access

5    occurred.

6        51.    Defendant owed a duty of care to Class Members because they were foreseeable and

7    probable victims of any inadequate data security practices.

8    **D.    An Unauthorized Release like this Results in Debilitating Losses to Consumers**

9        52.    Each year, identity theft causes tens of billions of dollars of losses to victims in the

10   United States.[5] Unauthorized third parties can leverage Plaintiffs' and Class members' Personal and

11   Medical Information that was obtained in the unauthorized release to commit thousands-indeed,

12   millions-of additional crimes, including opening new financial accounts in Class Members' names,

13   taking out loans in Class Members' names, using Class Members' names to obtain medical services

14   and government benefits, using Class Members' Personal Information to file fraudulent tax returns,

15   using Class Members' health insurance information to rack up massive medical debts in their names,

16   using Class Members' health information to target them in other phishing and hacking intrusions

17   based on their individual health needs, using Class Members' information to obtain government

18   benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses

19   in Class Members' names but with another person's photograph, and giving false information to

20   police during an arrest. Even worse, Class Members could be arrested for crimes identity thieves

21   have committed.

22       53.    Personal and Medical Information is such a valuable commodity to identity thieves

23   that once the information has been compromised, criminals often trade the information on the cyber

24   black-market for years.

25

26

27   [5] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info.    Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report

28   "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

54.   This is not just speculative. As the FTC has reported, if unauthorized third parties get access to Personal and Medical Information, they *will* use it.[6]

55.   Unauthorized third parties may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years**. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[7]

56.   Medical identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more "than identity thefts involving banking and finance, the government and the military, or education."[8]

57.   "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[9]

58.   As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI can go from $20 say up to—we've seen $60 or $70

---

[6] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[7] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu (emphasis added).

[8] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

[9] *Id.*

Class Action Complaint

[(referring to prices on dark web marketplaces)]."[10] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[11]

59.    As a direct and proximate result of the unauthorized release, Plaintiffs and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiffs and the Class must now take the time and effort to mitigate the actual and potential impact of the unauthorized release on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

60.    Plaintiffs and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

    a. Trespass, damage to, and theft of their personal property including Personal and Medical Information;

    b. Improper disclosure of their Personal and Medical Information;

    c. The imminent and certainly impending injury flowing from potential fraud  and identity theft posed by their Personal and Medical Information being placed in the hands of criminals and having been already misused;

    d. The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

    e. Damages flowing from Defendant's untimely and inadequate notification of the unauthorized release;

    f. Loss of privacy suffered as a result of the unauthorized release, including the harm of knowing unauthorized third parties have their Personal and Medical Information and that

---

[10] ID Experts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat

[11] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015,https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global- state-of-information-security-survey-2015.pdf

fraudsters have already used that information to initiate spam calls to members of the Class;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the unauthorized release;

h. Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market;

i.    The loss of use of and access to their credit, accounts, and/or funds;

j.    Damage to their credit due to fraudulent use of their Personal and Medical Information; and

k. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

61.    Moreover, Plaintiffs and Class have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further unauthorized release by the implementation of security measures and safeguards.

62.    Even if Defendant would acknowledge the harm caused by the unauthorized release by recommending that Plaintiffs and Class Members review the statements they receive from their healthcare providers and health insurer, any amount of identity theft repair and monitoring is woefully inadequate to protect Plaintiffs and Class members from a lifetime of identity theft risk and worse, it does nothing to reimburse Plaintiffs and Class members for the injuries they have already suffered.

## V.

## CLASS ACTION ALLEGATIONS

63.    Class Representative Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.  The putative class that Class Representative Plaintiffs seek to represent is composed of:

All patients of Defendant who received treatment at one of Defendant's hospital, satellite, or urgent care locations and whose personal medical information were released to third parties without authorization (hereinafter the "Class").

16

Excluded from the Class are the natural persons who are directors, and officers, of the Defendant, as well as Plaintiffs' counsel, judges, clerks, and other supporting staff of the Superior Court of California by and for the County of Alameda. Class Representative Plaintiffs expressly disclaims that he is seeking a class-wide recovery for personal injuries attributable to Defendant's conduct.

64.    Plaintiffs are informed and believe that the members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the Class members is unknown to Class Representative Plaintiffs at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendant. According to the Defendant's filings with the United States Department of Health and Human Services, 13.4 million consumers, including 9.6 million Californians, were affected by this intentional sale of confidential medical information.

65.    There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Class Representative Plaintiffs' claims are typical of the members of the class, and Class Representative Plaintiffs can fairly and adequately represent the interests of the Class.

66.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether Defendant failed to adequately safeguard Plaintiffs and the Class's Personal and Medical Information;

(b)    Whether Defendant sold information to third party advertisers;

(c)    Whether the type of information sold by Defendant to third party advertisers constitutes confidential medical information as defined by Civil Code §56.05(j);

(d)    Whether Defendant failed to protect Plaintiffs and the Class's Personal and Medical Information;

(e)    Whether Defendant's policy of selling data gathered from the Class on its websites and web applications violated the FTC Act, HIPAA, CMIA, and/or Defendant's other duties;

(d)    Whether Defendant violated the data security statutes and notification statutes applicable to Plaintiffs and the Class;

(e)    Whether Defendant failed to notify Plaintiffs and members of the Class about the unauthorized release expeditiously and without unreasonable delay after the

17

unauthorized release was discovered;

(f)    Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Class Members' Personal and Medical Information properly and as promised;

(g)    Whether Defendant entered into implied contracts with Plaintiffs and the members of the Class that included contract terms requiring Defendant to protect the confidentiality of Personal and Medical Information and have reasonable security measures;

(h)    Whether Defendant violated the consumer protection statutes and state medical privacy statutes applicable to Plaintiffs and the Class;

(i)    Whether Defendant failed to notify Plaintiffs and Class Members about the unauthorized release as soon as practical and without delay after the unauthorized release was discovered;

(j)    Whether Defendant's conduct described herein constitutes a breach of their implied contracts with Plaintiffs and the Class;

(k)    Whether Plaintiffs and the members of the Class are entitled to damages as a result of Defendant's wrongful conduct;

(l)    What equitable relief is appropriate to redress Defendant's wrongful conduct;

(m)    What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Plaintiffs and members of the Class;

(n)    Whether Defendant acted negligently in failing to safeguard Plaintiffs' and the Class's Personal and Medical Information, including whether its conduct constitutes negligence; and

(o)    Whether Defendant acted negligently in failing to safeguard Plaintiffs' and the Class's Personal and Medical Information, including whether its conduct constitutes negligence *per se*.

Class Representative Plaintiffs' claims are typical of those of the other Class members because Class Representative Plaintiffs, like every other Class member, were exposed to virtually identical conduct and is entitled to nominal damages of one thousand dollars ($1,000) per violation pursuant to Civil Code §§ 56.101 and 56.36(b)(1).

67.    Class Representative Plaintiffs will fairly and adequately protect the interests of the Class. Moreover, Class Representative Plaintiffs have no interest that is contrary to or in conflict with those of the Class they seek to represent during the Class Period. In addition, Class Representative Plaintiffs have retained competent counsel experienced in class action litigation to further ensure such protection and intend to prosecute this action vigorously.

Class Action Complaint

1    68.    The prosecution of separate actions by individual members of the Class would create
2    a risk of inconsistent or varying adjudications with respect to individual members of the Class,
3    which would establish incompatible standards of conduct for the Defendant in the State of California
4    and would lead to repetitious trials of the numerous common questions of fact and law in the State
5    of California. Class Representative Plaintiffs know of no difficulty that will be encountered in the
6    management of this litigation that would preclude its maintenance as a class action. As a result, a
7    class action is superior to other available methods for the fair and efficient adjudication of this
8    controversy.

9    69.    Proper and sufficient notice of this action may be provided to the Class members
10   through direct mail.

11   70.    Moreover, the Class members' individual damages are insufficient to justify the cost
12   of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting
13   substantial damages in the aggregate would go unremedied without certification of the Class.
14   Absent certification of this action as a class action, Class Representative Plaintiffs and the members
15   of the Class will continue to be damaged by the unauthorized release of their individual identifiable
16   medical information.

17                                              **VI.**

18                                   **CAUSES OF ACTION**

19                                **FIRST CAUSE OF ACTION**
     **(Violations of the Confidentiality of Medical Information Act, Civil Code § 56, *et seq.*)**
20                                 (Against All Defendants)

21   71.    Plaintiffs and the Class incorporate by reference all of the above paragraphs of this
22   Complaint as though fully stated herein.

23   72.    Defendant is a "provider of health care," within the meaning of Civil Code §
24   56.05(m), and maintained and continues to maintain "medical information," within the meaning of
25   Civil Code § 56.05(j), of "patients" of the Defendant, within the meaning of Civil Code § 56.05(k).

26   73.    Plaintiffs and the Class are "patients" of Defendant within the meaning of Civil Code
27   § 56.05(k). Furthermore, Plaintiffs and the Class, as patients of Defendant, had their individually
28   identifiable "medical information," within the meaning of Civil Code § 56.05(j), stored onto

                                              19

1  Defendant's server, and received treatment at one of Defendant's hospital, satellite, or urgent care
2  locations on or before April 2024.  Plaintiffs and the Class also utilized Defendant's website and/or
3  web application to research medical conditions, make appointments with their physicians for
4  specific medical conditions,  email their physicians regarding medical questions they had, amongst
5  other medical uses.

6      74.    On April 26, 2027, Plaintiffs and the Class were informed through an article on
7  Techcrunch, along with other media outlets that Defendant released to "third-party advertisers,
8  including Google, Microsoft and X (formerly Twitter)" Plaintiffs' and the Class's individual
9  identifiable "medical information," within the meaning of Civil Code § 56.05(j),[12] including
10  "member names and IP addresses, as well as information that could indicate if members were signed
11  into a Kaiser Permanente account or service and how members "interacted with and navigated
12  through the website and mobile applications, and search terms used in the health encyclopedia."[13]

13      75.    Despite realizing the unauthorized release of Plaintiffs' personal medical
14  information, Defendant has yet to inform Plaintiffs and the Class Members about the approximate
15  duration of the issue in its policies and procedures that allowed unauthorized individual(s) access to
16  Plaintiffs' and the Class Members' personal medical information.

17      76.    As a result of Defendant's above-described conduct, Plaintiffs and the Class have
18  suffered damages from the unauthorized release of their individual identifiable "medical
19  information" made unlawful by Civil Code §§ 56.10 and 56.101.

20      77.    Because Civil Code § 56.101 allows for the remedies and penalties provided under
21  Civil Code § 56.36(b), Plaintiffs individually and on behalf of the Class seek nominal damages of

22

23  _____

24  [12] Pursuant to Civil Code § 56.05(j), "Medical information" means "any individually identifiable
    information, in electronic or physical form, in possession of or derived from a provider of health
25  care...regarding a patient's medical history, mental or physical condition, or treatment. 'Individually
    Identifiable' means that the medical information includes or contains any elements of personal identifying
26  information sufficient to allow identification of the individual, such as the patient's name, address,
    electronic mail address, telephone number, or social security number, or other information that, alone or in
27  combination with other publicly available information, reveals the individual's identity."

      [13] Whittaker, Zack. "Health insurance giant Kaiser will notify millions of a data breach after
28  sharing patients' data with advertisers," https://techcrunch.com/2024/04/25/kaiser-permanente-health-plan-
    millions-data-breach/ last accessed on April 26, 2024.

Class Action Complaint

1   one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1); and Plaintiffs

2   individually seek actual damages suffered, if any, pursuant to Civil Code § 56.36(b)(2).

3

4                                **SECOND CAUSE OF ACTION**
    **(Violations of the CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code**

5                                      **§17200, *et seq.*)**

6        78.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as

7   though fully set forth herein.

8        79.    Defendant is organized under the laws of California. Defendant violated California's

9   Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*, by engaging in unlawful,

10  unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading

11  advertising that constitute acts of "unfair competition" as defined in the UCL, including, but not

12  limited to, the following:

13           a.   by representing and advertising that it would maintain adequate data privacy and

14                security practices and procedures to safeguard their Personal and Medical

15                Information from unauthorized disclosure, release, data breach, and theft;

16                representing  and advertising that they did and would comply with the

17                requirement of relevant federal and state laws pertaining to the privacy and

18                security of the Class' Personal and Medical Information; and omitting,

19                suppressing, and concealing the material fact of the inadequacy of the privacy

20                and security protections for the Class' Personal and Medical Information;

21           b.   by soliciting and collecting Class members' Personal and Medical Information

22                with knowledge that the information would not be adequately protected; and by

23                storing Plaintiffs' and Class members' Personal and Medical Information in

24                an  unsecure environment;

25           c.   by violating the privacy and security requirements of HIPAA, 42 U.S.C. §1302d,

26                *et seq.*; and

27           d.   by violating the CMIA, Cal. Civ. Code § 56, *et seq.*

28

Class Action Complaint

80.     These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. Defendant's practice was also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws like the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1302d, *et seq.*, and the CMIA, Cal. Civ. Code § 56, *et seq.*

81.     As a direct and proximate result of Defendant's unfair and unlawful practices and acts, Plaintiffs and the Class were injured and lost money or property, including but not limited to the overpayments Defendant received to take reasonable and adequate security measures (but did not), the loss of their legally protected interest in the confidentiality and privacy of their Personal and Medical Information, and additional losses described above. In addition, Defendant treated the personal and medical information of Plaintiffs and the Class as its own property, and sold it for profit, causing a loss of money and property to Plaintiffs and the Class.

82.     Defendant knew or should have known that its sale of information to third party advertisers would violate the CMIA, HIPAA and the FTC, and would fail to safeguard Plaintiffs and Class members' Personal and Medical Information. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were intentional, knowing and willful, and/or wanton and reckless with respect to the rights of the Class.

83.     The conduct and practices described above emanated from California where decisions related to Defendant's advertising and data security were made.

84.     Plaintiffs seek relief under the UCL, including restitution to the Class of money or property that the Defendant may have acquired, including all monies it received through the sale of this medical information, by means of Defendant's deceptive, unlawful, and unfair business practices, declaratory relief, attorney fees, costs and expenses (pursuant to Cal. Code Civ. P. § 1021.5), and injunctive or other equitable relief.

### THIRD CAUSE OF ACTION
### (NEGLIGENCE)

85.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

22

86.     Defendant required Plaintiffs and Class Members to submit non-public, sensitive PII and other data via its contracts with the respective health care providers.

87.     Defendant had, and continues to have, a duty to Plaintiffs and Class Members to exercise reasonable care in safeguarding and protecting their Private Information and other data. Defendant also had, and continues to have, a duty to use ordinary care in activities from which harm might be reasonably anticipated, such as in the collection, storage and protection of Private Information and other data within their possession, custody and control and that of its vendors.

88. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and patients and former patients. The special relationship arose because Plaintiffs and the Members of the Class had entrusted Defendant with their Private Information and other data by virtue of being patients at the respective health care providers with which Defendant had contracted to provide services. Only Defendant was in a position to ensure that its systems were sufficient to protect against the harm to Plaintiffs and the Class Members from a data breach.

89. Defendant violated these standards and duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs and Class Members' Private Information and other data by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the Private Information and other data entrusted to it, including Plaintiffs' and Class Members' Private Information and other data as aforesaid. It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' Private Information and other data by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class Members' Private Information and other data.

90. Defendant, by and through its negligent actions, inaction, omissions, and want of ordinary care, unlawfully breached its duties to Plaintiffs and Class Members by, inter alia, failing

1  to exercise reasonable care in safeguarding and protecting Plaintiffs and Class Members' Private

2  Information and other data within their possession, custody and control.

3      91. Defendant, by and through its negligent actions, inactions, omissions, and want of

4  ordinary care, further breached its duties to Plaintiffs and Class Members by failing to design, adopt,

5  implement, control, direct, oversee, manage, monitor and audit their processes, controls, policies,

6  procedures, protocols, and software and hardware systems for complying with the applicable laws

7  and safeguarding and protecting their Private Information and other data.

8      92. But for Defendant's negligent breach of the above-described duties owed to Plaintiffs

9  and Class Members, their Private Information and other data would not have been released,

10  disclosed, and disseminated without their authorization.

11      93. Plaintiffs' and Class Members' Private Information and other data was transferred,

12  sold, opened, viewed, mined and otherwise released, disclosed, and disseminated to unauthorized

13  persons without their authorization as the direct and proximate result of Defendant's failure to

14  design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls,

15  policies, procedures and protocols for complying with the applicable laws and safeguarding and

16  protecting Plaintiffs' and Class Members' Private Information and other data.

17      94. As a direct and proximate result of Defendant's above-described wrongful actions,

18  inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach,

19  Plaintiffs and Class Members have suffered, and will continue to suffer, ongoing, imminent, and

20  impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic

21  harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm;

22  loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data

23  on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time

24  spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time

25  spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic

26  and noneconomic harm.

27      95. Defendant's above-described wrongful actions, inaction, omissions, and want of

28  ordinary care that directly and proximately caused this Data Breach constitute negligence.

24

96. Plaintiffs are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

97. Plaintiffs are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security programs and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide robust and adequate credit monitoring to all Class Members, and any other relief this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (NEGLIGENCE PER SE)

98. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

99. Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the personal and financial information of Plaintiffs and Class Members.

100.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information and other data of Plaintiffs and Class Members. The pertinent FTC publications and orders form part of the basis of Defendant's duty in this regard.

101.    Defendant required, gathered, and stored personal and financial information of Plaintiffs and Class Members to fulfill its contracts with the various and several health care providers.

102.    Defendant violated the FTCA by failing to use reasonable measures to protect the Private Information and other data of Plaintiffs and Class Members and by not complying with applicable industry standards, as described herein.

103.    Plaintiffs and Class Members are within the class of persons that the FTC Act was intended to protect.

104.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses,

25

1    which, as a result of their failure to employ reasonable data security measures and avoid unfair and

2    deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

3            105.     As a direct and proximate result of Defendant's negligence per se, Plaintiffs

4    and Class Members have suffered, and continue to suffer, injuries, damages arising from identify

5    theft; from their needing to contact agencies administering unemployment benefits; potentially

6    defending themselves from legal action base upon fraudulent applications for unemployment

7    benefits made in their name; contacting their financial institutions; loss of use of funds; closing or

8    modifying financial accounts; damages from lost time and effort to mitigate the actual and potential

9    impact of the data breach on their lives; closely reviewing and monitoring their accounts for

10   unauthorized activity which is certainly impending; placing credit freezes and credit alerts with

11   credit reporting agencies; and damages from identify theft, which may take months or years to

12   discover and detect.

13           106.     Defendant's violation of the FTCA constitutes negligence per se.

14           107.     For the same reasons and upon the same bases, Defendant's violation of the

15   CMIA, UCL, and various other State and local statutes, constitutes negligence per se.

16           108.     As a direct and proximate result of Defendant's violation of the foregoing

17   statutes and regulations, Plaintiffs and Class Members have suffered injury and are entitled to

18   compensatory, consequential, and punitive damages in an amount to be proven at trial.

19

20   **PRAYER FOR RELIEF**

21        WHEREFORE, Plaintiffs respectfully request the Court to grant Plaintiffs and the Class

22   members the following relief against Defendant:

23        a.     An order certifying this action as a class action under Code of Civil Procedure §382,

24   defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that

25   Plaintiffs are proper representatives of the Class requested herein;

26        b.     A judgment in favor of Plaintiffs and the Class awarding them appropriate monetary

27   relief, including actual and statutory damages, including statutory damages under the CMIA,

28

26

1  punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and

2  proper.

3         c.     An order providing injunctive and other equitable relief as necessary to protect the

4  interests of the Class as requested herein, including, but not limited to:

5            i.     Ordering that Defendant engage third-party security auditors/penetration

6                    testers as well as internal security personnel to conduct testing, including

7                    simulated attacks, penetration tests, and audits on Defendant's systems on a

8                    periodic basis, and ordering Defendant to promptly correct any problems or

9                    issues detected by such third-party security auditors;

10           ii.     Ordering that Defendant engage third-party security auditors and internal

11                    personnel to run automated security monitoring;

12          iii.    Ordering that Defendant audit, test, and train their security personnel

13                    regarding any new or modified procedures;

14          iv.    Ordering that Defendant's segment customer data by, among other things,

15                    creating firewalls and access controls so that if one area of Defendant's

16                    systems is compromised, hackers cannot gain access to other portions of

17                    Defendant's systems;

18          v.     Ordering that Defendant purge, delete, and destroy in a reasonably secure

19                    manner customer data not necessary for its provisions of services;

20          vi.    Ordering that Defendant conduct regular database scanning and securing

21                    checks;

22          vii.    Ordering that Defendant routinely and continually conduct internal training

23                    and education to inform internal security personnel how to identify and

24                    contain an unauthorized release when it occurs and what to do in response to

25                    an unauthorized release; and

26          viii.   Ordering Defendant to meaningfully educate its current, former, and

27                    prospective employees and subcontractors about the threats they face as a

28

27

Class Action Complaint

1       result of the loss of their financial and personal information to third parties,

2       as well as the steps they must take to protect themselves.;

3       d.      An order requiring Defendant to pay the costs involved in notifying the Class

4   members about the judgment and administering the claims process;

5       e.      Restitutionary disgorgement of all wrongly acquired monies received by Defendant

6   from the sale of the medical information of Plaintiffs and the Class Members, including monies

7   directly received from advertisers;

8       f.      A judgment in favor of Plaintiffs and the Class awarding them pre-judgment and

9   post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, including

10  the UCL, Cal. Bus. & Prof. Code § 17082 and the CMIA, Cal. Civ. Code 56.35; and

11      g.      An award of such other and further relief as this Court may deem just and proper.

12

13                          **POTTER HANDY LLP**

14

15  Dated: April 29, 2024            By:  _____/s/ James M. Treglio_____

16                                        Mark D. Potter, Esq.
                                          James M. Treglio, Esq.
17                                        Attorneys for the Plaintiffs and the Class

18

19

20                          **DEMAND FOR JURY TRIAL**

21      Plaintiffs and the Class hereby demand a jury trial on all causes of action and claims with

22  respect to which they have a right to jury trial.

23                          **POTTER HANDY LLP**

24

25  Dated: April 29, 2024            By:  _____/s/ James M. Treglio_____

26                                        Mark D. Potter, Esq.
                                          James M. Treglio, Esq.
27                                        Attorneys for the Plaintiffs and the Class

28

                                28

Class Action Complaint

# EXHIBIT B

# EXHIBIT B

**SUM-100**

# SUMMONS
## *(CITATION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
04/29/2024
Chad Finke, Executive Officer / Clerk of the Court
By: _____ D. Franklin _____ Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

KAISER FOUNDATION HEALTH PLAN, INC., a
California Corporation; and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CHRISTOPHER NEWTON,  CHRISTA VITAL, SCOTT
SCHUTZA, on behalf of themselves and all others similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Alameda Superior Court

Hayward Hall of Justice, 24405 Amador Street, Hayward, CA 94544

CASE NUMBER:
*(Número del Caso):*
**24CV073453**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

James M. Treglio; Potter Handy, LLP; 100 Pine St., Ste 1250, San Francisco, CA 94111; (415) 534-1911

DATE: 04/29/2024       Chad Finke, Executive Officer / Clerk of the Court       Clerk, by _____ D. Franklin _____ , Deputy
*(Fecha)*                                                                        *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☑ on behalf of *(specify )*:  KAISER FOUNDATION HEALTH PLAN, INC.

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| James M. Treglio (SBN 228077)<br>100 Pine St., Ste 1250,<br>San Francisco, CA 94111<br>TELEPHONE NO: (415) 534-1911    FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*:    CHRISTOPHER NEWTON | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>05/23/2024 at 09:45:53 AM<br>By: Angela Linhares,<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS:  Hayward Hall of Justice, 24405 Amador Street,
MAILING ADDRESS:
CITY AND ZIP CODE:  Hayward, 94544
BRANCH NAME:  Alameda Superior Court

| PLAINTIFF / PETITIONER:    CHRISTOPHER NEWTON<br>DEFENDANT / RESPONDENT:    KAISER FOUNDATION HEALTH PLAN, INC., | CASE NUMBER:<br>24CV073453 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>11056904 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒ summons
   b. ☒ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents)*:    CIVIL CASE COVER SHEET;CIVIL CASE COVER SHEET ADDENDUM;NOTICE OF CASE MANAGEMENT CONFERENCE;CERTIFICATE OF MAILING
3. a. Party served *(specify name of party as shown on documents served)*:
      KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation;
   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      Registered Agent-CSC - LAWYERS INCORPORATING SERVICE Acting through Koy Saechao ,Intake Specialist
4. Address where the party was served:
   2710 Gateway Oaks Drive #150
5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:    05/15/2024    (2) at *(time)*:    1.35 pm
   b. ☐ **by substituted service.** On *(date)*:    at *(time)*:    I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:
         from *(city)*:    or ☐ a declaration of mailing is attached.
      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: CHRISTOPHER NEWTON | CASE NUMBER: |
|---|---|
| DEFENDANT / RESPONDENT: KAISER FOUNDATION HEALTH PLAN, INC., | 24CV073453 |

5.   c.   ☐   **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1)   on *(date)*:                                   (2)   from *(city)*:

(3)   ☐   with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt.)* (Code Civ. Proc., § 415.30.)

(4)   ☐   to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d.   ☐   **by other means** *(specify means of service and authorizing code section)*:

☐   Additional page describing service is attached.

6.   The "Notice to the Person Served" (on the summons) was completed as follows:

a.   ☐   as an individual defendant.

b.   ☐   as the person sued under the fictitious name of *(specify)*:

c.   ☐   as occupant.

d.   ☒   On behalf of *(specify)*:    KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation;

under the following Code of Civil Procedure section:

☒   416.10 (corporation)                                   ☐   415.95 (business organization, form unknown)
☐   416.20 (defunct corporation)                      ☐   416.60 (minor)
☐   416.30 (joint stock company/association)    ☐   416.70 (ward or conservatee)
☐   416.40 (association or partnership)              ☐   416.90 (authorized person)
☐   416.50 (public entity)                                    ☐   415.46 (occupant)
☐   other:

7.   **Person who served papers**

a.   Name:                     Johnny Adams

b.   Address:                 Trinity Attorney Service 1017 L Street, #654 Sacramento, CA 95814

c.   Telephone number:    916.719.9626

d.   **The fee** for service was:    $21

e.   I am:

(1)   ☐   not a registered California process server.

(2)   ☐   exempt from registration under Business and Professions Code section 22350(b).

(3)   ☒   a registered California process server:

(i)   ☐   owner   ☐   employee   ☒   independent contractor

(ii)   Registration No:   #1445

(iii)   County:   Sacramento

8.   ☒   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9.   ☐   **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:   05/21/2024

Johnny Adams

_____          _____
(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)                          (SIGNATURE)

# EXHIBIT C

# EXHIBIT C

1
2
3
4
5
6

**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Tel: (415) 534-1911
Fax: (888) 422-5191

7   Attorneys for Plaintiffs Christopher Newton, Christa Vital, Scott Schutza, on behalf of
    themselves and all others similarly situated,

8

9            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                **FOR THE COUNTY OF ALAMEDA**

11   CHRISTOPHER NEWTON,  CHRISTA VITAL,    )   <u>**CASE NO. 24CV073453**</u>
12   SCOTT SCHUTZA, on behalf of themselves and )
     all others similarly situated,                )   <u>**FIRST AMENDED CLASS ACTION**</u>
13                                                  )   <u>**COMPLAINT**</u>
                                                    )
14                        Plaintiffs,              )   **CLASS COMPLAINT FOR DAMAGES**
                                                    )   **AND INJUNCTIVE RELIEF (FOR**
15          vs.                                     )   **VIOLATIONS OF:**
                                                    )
16   KAISER FOUNDATION HEALTH PLAN,                 )   **(1) THE CONFIDENTIALITY OF**
     INC., a California Corporation; META           )   **MEDICAL INFORMATION ACT,**
17   PLATFORMS, INC., a Delaware Corporation;       )   **CIVIL CODE §§ 56, *ET SEQ*.);**
                                                    )   **(2) CALIFORNIA UNFAIR**
18   GOOGLE LLC, a Delaware Limited Liability       )   **COMPETITION LAW, CAL. BUS.**
     Company; and DOES 1 through 100, inclusive,    )   **& PROF. CODE §17200, *ET SEQ.;***
19                                                  )   **(3) NEGLIGENCE;**
                         Defendants.                )   **(4) NEGLIGENCE PER SE;**
20                                                      **(5) COMMON LAW INVASION OF**
                                                        **PRIVACY – INTRUSION UPON**
21                                                      **SECLUSION;**
                                                        **(6) CALIFORNIA INVASION OF**
22                                                      **PRIVACY ACT CAL. PENAL**
                                                        **CODE § 631; and**
23                                                      **(7) CALIFORNIA INVASION OF**
                                                        **PRIVACY ACT CAL. PENAL**
24                                                      **CODE § 632.**
25                                                      **DEMAND FOR JURY TRIAL**
26
27
28

First Amended Class Action Complaint

Class Representative Plaintiffs Christopher Newton, Christa Vital, and Scott Schutza ("Plaintiffs"), by and through their attorneys, individually and on behalf of others similarly situated, allege upon information and belief as follows:

## I.

## <u>INTRODUCTION</u>

1.     Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.* (hereinafter referred to as the "Act"), Plaintiffs Christopher Newton, Christa Vital, Scott Schutza and all other persons similarly situated, had a right to keep their personal medical information provided to Defendant KAISER FOUNDATION HEALTH PLAN, INC. ("Kaiser"), META PLATFORMS, INC. ("Meta"), and GOOGLE LLC ("Google") (collectively, "Defendants") confidential.  The short title of the Act states, "The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved.  It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information." The Act specifically provides that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization...." Civil Code. § 56.10(a).  The Act further provides that "Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36."  Civil Code § 56.101(a).

2.     Civil Code § 56.36(b) provides Plaintiffs, and all other persons similarly situated, with a private right to bring an action against Defendants for violation of Civil Code § 56.101 by

specifically providing that "[i]n addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000).  In order to recover under this paragraph, *it shall not be necessary that the plaintiff suffered or was threatened with actual damages*. (2) The amount of actual damages, if any, sustained by the patient."  (Emphasis added.) Here, the release of information to third parties without so much as a subpoena clearly violates the requirements of this statute.

3.     This class action is brought on behalf of Plaintiffs and a putative class defined as: "All natural persons in the United States who used the Kaiser Platform and whose communications and/or data were intercepted by Defendants, and who received a Notice of Data Breach in May of 2024." ("the "Class," or the "Class Members").

4.     As alleged more fully below, Kaiser created, maintained, preserved, and stored Plaintiffs and the Class members' personal medical information onto Kaiser's computer network, including websites and web applications prior to October 2023.  Due to Kaiser's intentional release of information without authorization, there was an unauthorized release of Plaintiffs' and the Class members' confidential medical information that occurred continuously from the time this information was provided by the Class to Kaiser, in violation of Civil Code § 56.101 of the Act.

5.     As alleged more fully below, Kaiser created, maintained, preserved, and stored Plaintiffs' and the Class members' confidential medical information which were released to unauthorized persons, without Plaintiffs' and the Class members' prior written authorization. This act of providing unauthorized access to Plaintiffs' and the Class Members' confidential medical information continuously constitutes an unauthorized release of confidential medical information in violation of Civil Code § 56.101 of the Act.  Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Class Representative Plaintiffs, individually and on behalf of others similarly situated, seek nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1).  Additionally, Class Representative Plaintiffs,

individually and on behalf of others similarly situated, seek injunctive relief for unlawful violations of Business and Professions Code §§ 17200, *et seq*.

6.    Unbeknownst to Plaintiffs and Class members, Meta and Google's technology was intentionally incorporated on the Kaiser Platform, through which Meta and Google intercepted users' health data and other highly sensitive information. Meta and Google intercepted, at least, users' "IP address, name, information that could indicate you were signed into a Kaiser Permanente account or service, information showing how you interacted with and navigated through our website or mobile applications, and search terms used in the health encyclopedia."

7.    This information was not aggregated or deidentified, nor were Meta and Google prohibited from using this information for their own benefit.

8.    Plaintiffs provided their information, including health data and PII in connection with obtaining prescriptions and medical appointments, to Kaiser with the expectation that this information would remain confidential and private.

9.    Meta and Google's interception of this information without consent constitutes an extreme invasion of Plaintiffs' and Class members' privacy. Given the secret and undisclosed nature of Google and Meta's conduct, additional evidence supporting Plaintiffs' claims, including the full extent of medical information they intercepted, and how they used that information, will be revealed in discovery.

10.    Class Representative Plaintiffs do not seek any relief greater than or different from the relief sought for the Class of which Plaintiffs are members. The action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, for a large class of persons.  Private enforcement is necessary and places a disproportionate financial burden on Class Representative Plaintiffs in relation to Class Representative Plaintiffs' stake in the matter.

## II.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action under California Code of Civil Procedure § 410.10.  The aggregated amount of damages incurred by Plaintiffs and the Class exceeds the

1  $25,000 jurisdictional minimum of this Court.  The amount in controversy as to the Plaintiffs

2  individually and each individual Class member does not exceed $75,000, including interest and any

3  pro rata award of attorneys' fees, costs, and damages.  Venue is proper in this Court under California

4  Bus. & Prof. Code § 17203, Code of Civil Procedure §§ 395(a) and 395.5 because Kaiser is

5  registered while all Defendants do business in the State of California and in the County of Alameda.

6  Defendants obtained medical information in the transaction of business in the County of Alameda,

7  which has caused both obligations and liability of Defendants to arise in the County of Alameda.

8                                              **III.**

9                                          **PARTIES**

10  **A.    PLAINTIFFS**

11         12.    Class Representative Plaintiff Christopher Newton is a resident of California.  At all

12  times relevant, Plaintiff was a patient of Kaiser who utilized Kaiser website and web application to

13  receive medical treatment medical treatment from Kaiser, and was a patient, as defined by Civil

14  Code § 56.05(k). Plaintiff's individual identifiable medical information derived by Kaiser in

15  electronic form was in possession of Kaiser, including but not limited to Plaintiff's medical history,

16  mental or physical condition, or treatment, including diagnosis and treatment dates.  Such medical

17  information included or contained an element of personal identifying information sufficient to allow

18  identification of the individual, such as Plaintiff's name, date of birth, addresses, medical record

19  number, insurance provider, electronic mail address, telephone number, or social security number,

20  or other information that, alone or in combination with other publicly available information, reveals

21  Plaintiff's identity. During this time, Plaintiff also maintained accounts with Meta and Google, using

22  the same device used to access the Kaiser platform to access Meta and Google platforms. However,

23  unbeknownst to Plaintiff, Meta and Google intercepted information, including PII, health data,

24  prescription requests, and other activity across the Kaiser Platform. Plaintiff did not consent to the

25  interception of his data, which was never disclosed and directly contrary to the representations made

26  by Kaiser.

27         13.    Class Representative Plaintiff Christa Vital is a resident of California.  At all times

28  relevant, Plaintiff was a patient of Defendant who utilized Defendant's website and web application

                                              4

to receive medical treatment from Defendant, and was a patient, as defined by Civil Code § 56.05(k). Plaintiff's individual identifiable medical information derived by Defendant in electronic form was in possession of Defendant, including but not limited to Plaintiff's medical history, mental or physical condition, or treatment, including diagnosis and treatment dates.  Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiff's name, date of birth, addresses, medical record number, insurance provider, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals Plaintiff's identity. Since receiving treatment at Defendant's facilities, Plaintiff has received numerous solicitations by mail and phone from third parties at an address and number she only provided to Defendant. She has also begun receiving phone call regarding health issues she and her family have sought treatment for. During this time, Plaintiff also maintained accounts with Meta and Google, using the same device used to access the Kaiser platform to access Meta and Google platforms. However, unbeknownst to Plaintiff, Meta and Google intercepted information, including PII, health data, prescription requests, and other activity across the Kaiser Platform. Plaintiff did not consent to the interception of her data, which was never disclosed and directly contrary to the representations made by Kaiser.

14.    Class Representative Plaintiff Scott Schutza is a resident of California.  At all times relevant, Plaintiff was a patient of Defendant who utilized Defendant's website and web application to receive medical treatment medical treatment from Defendant, and was a patient, as defined by Civil Code § 56.05(k). Plaintiff's individual identifiable medical information derived by Defendant in electronic form was in possession of Defendant, including but not limited to Plaintiff's medical history, mental or physical condition, or treatment, including diagnosis and treatment dates.  Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiff's name, date of birth, addresses, medical record number, insurance provider, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals Plaintiff's identity. During this time, Plaintiff also maintained accounts with Meta and

First Amended Class Action Complaint

Google, using the same device used to access the Kaiser platform to access Meta and Google platforms. However, unbeknownst to Plaintiff, Meta and Google intercepted information, including PII, health data, prescription requests, and other activity across the Kaiser Platform. Plaintiff did not consent to the interception of his data, which was never disclosed and directly contrary to the representations made by Kaiser.

15.     On April 26, 2027, Plaintiffs and the Class were informed through an article on various media outlets, such as Techcrunch that their personal medical information and personal identifying information were disclosed to "third-party advertisers, including Google, Microsoft and X (formerly Twitter)."[1] This information was subsequently confirmed by Kaiser in its filing with the United States Department of Health and Human Services. Subsequently, Plaintiffs received notices from Kaiser that their information was included in the data breach.

**B.      DEFENDANTS**

16.     Defendant Kaiser Foundation Health Plan, Inc. is a California corporation, with its principal places of business located at One Kaiser Plaza, Oakland, CA 94612.  At all times relevant, Kaiser is a "provider of health care" as defined by Civil Code § 56.05(m).  Prior to October 2023, Kaiser created, maintained, preserved, and stored Plaintiffs' and the Class members' individually identifiable medical information onto its computer network, including but not limited to Plaintiffs' and the Class members' medical history, mental or physical condition, or treatment, including diagnosis and treatment dates.  Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiffs' and the Class members' names, dates of birth, addresses, medical record numbers, insurance providers, electronic mail addresses, telephone numbers, or social security numbers, or other information that, alone or in combination with other publicly available information, reveals Plaintiffs' and the Class members' identities.

17.     Defendant Meta is a Delaware corporation, with its principal places of business located at 1 Meta Way, Menlo Park, CA 94025.  Meta at all times knew that the incorporation of its

---

[1] Whittaker, Zack. "Health insurance giant Kaiser will notify millions of a data breach after sharing patients' data with advertisers," https://techcrunch.com/2024/04/25/kaiser-permanente-health-plan-millions-data-breach/ last accessed on April 26, 2024.

First Amended Class Action Complaint

software into the Kaiser Platform would result in its interception of identifiable health information and other sensitive data. Meta, as the creator of its SDK and Meta Pixel, knew that it intercepted each of a user's interactions on the website or mobile application that incorporated this technology. Meta has consistently come under scrutiny for incorporating its technology on websites and applications that involve the transmittal of sensitive data, including health information, yet continues to do so.

18.     For instance, in February 2019, the Wall Street Journal published an in-depth analysis of Meta's collection of sensitive health information using its tracking technology from certain mobile applications. These reports led to a subsequent investigation by the Federal Trade Commission, who confirmed that Meta did in fact collect sensitive health information from a popular women's health app, including pregnancy data, between June 2016 to February 2019. It also confirmed that Meta went on to use this information for its own research and development. The New York State Department of Financial Services conducted a similar investigation of Meta and reached a similar conclusion, including finding that Meta did not take sufficient steps or precautions to prevent its interception of this kind of information or its use for commercial purposes.

19.     Further, since at least 2016, Meta has allowed granular ad targeting based on sensitive information collected or received about individuals, including relating to at least breast feeding, ethnicities, religious beliefs, and income levels.  Despite this, it was not until November 9, 2021, that Meta acknowledged its use of data to target users based on "sensitive" topics, including "health" and how that was problematic. While Meta stated that it would remove this functionality in part, it later clarified that the change was limited to individuals' interactions with "content" on the Facebook platform (i.e., the "Detailed Targeting" option on Facebook) and did not apply to data intercepted through Meta Pixel or SDK or collected through other means. Thus, advertisers were still permitted to use "website custom audiences" and "lookalike" audiences to target users based on the information Meta intercepted through Meta Pixel and its SDK.

20.     Further, Meta has acknowledged its interception of sensitive data, including health information, in public statements highlighting its efforts to develop a "Health Terms Integrity System" intended to filter out this type of information and prevent them from entering Meta's

7

system. However, independent investigations have confirmed these data filtration systems are not successful at preventing the interception of health data. For instance, researchers at The Markup found while investigating the use of the Meta Pixel on abortion-related websites that Meta's purported "filtering" system failed to discard even the most obvious forms of sexual health information, including URLs that included the phrases "post-abortion," "i-think-im-pregnant," and "abortion-pill."

21.    Meta's own employees have confirmed the same, admitting that Meta lacks the ability to prevent the collection of sensitive health data or its use in ads. For example, Meta engineers on the ad and business product team wrote in a 2021 privacy overview "[w]e do not have an adequate level of control and explainability over how our systems use data, and thus we can't confidently make controlled policy changes or external commitments such as 'we will not use X data f or Y purpose.'"

22.    Meta did not take any steps to prevent Kaiser from using its technology on the Kaiser Platform or to prevent its interception and use of Kaiser users' sensitive health data—like answers to health questions. As such, Meta's conduct was intentional despite knowing the privacy violations it caused to Plaintiffs and Class members.

23.    Defendant Google is a Delaware limited liability company, with its principal places of business located at 1600 Amphitheatre Parkway, Mountain View, CA 94043. Google at all times knew that the incorporation of its software into the Kaiser Platform would result in its interception of identifiable health information and other sensitive data. Google did not take any steps to prevent Kaiser from using its technology on the Kaiser Platform or to prevent its interception and use of Kaiser users' sensitive health data—like answers to health questions. As such, Google's conduct was intentional despite knowing the privacy violations it caused to Plaintiffs and Class members.

## C.    DOE DEFENDANTS

24.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiffs, who therefore sue the Defendants by such fictitious names under the Code of Civil Procedure § 474. Each of the Defendants designated herein as a DOE is legally responsible in some

8

manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of court and/or amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through 100 when such identities become known.  Any reference made to a named Defendant by specific name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1 through 100, inclusive.

**D.      AGENCY/AIDING AND ABETTING**

25.      At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

26.      Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs and the Class, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**IV.**

**FACTUAL ALLEGATIONS**

**A.     The Unauthorized Release**

27.      On April 26, 2027, Plaintiffs and the Class were informed through an article on Techcrunch and other medica outlets that their personal medical information and personal identifying information were disclosed to "third-party advertisers, including Google, Microsoft and X (formerly Twitter)." [2] ("Notice"). At no point had Plaintiffs and the Class provided any authorization to Kaiser to release any medical records to any person on their behalf. Nor was any

---

[2] *Id.*

First Amended Class Action Complaint

information sought at this time by any third party by way of a subpoena or request for documents in discovery. ("Data Breach").

28.     The reports further stated that Kaiser "conducted an investigation that found "certain online technologies, previously installed on its websites and mobile applications, may have transmitted personal information to third-party vendors.""

29.     The reports also mentioned "that the data shared with advertisers includes member names and IP addresses, as well as information that could indicate if members were signed into a Kaiser Permanente account or service and how members "interacted with and navigated through the website and mobile applications, and search terms used in the health encyclopedia.""

30.     According to the media reports, Kaiser "subsequently removed the tracking code from its websites and mobile apps."

31.     Although the reports mentioned that Kaiser "filed a legally required notice with the U.S. government on April 12 but made public on Thursday confirming that 13.4 million residents had information exposed," and "notified California's attorney general of the data breach," Kaiser's spokesperson confirmed that Kaiser has yet to notify the affected individuals. The Notice stated "that the organization would begin notifying 13.4 million affected current and former members and patients who accessed its websites and mobile apps. The notifications will start in May in all markets where Kaiser Permanente operates, the spokesperson said."

32.     As such, Plaintiffs are informed and believe that Kaiser regularly gave unrestricted access to third parties to the Personal and Medical Information of Plaintiffs and all Class Members for an undetermined period of time prior to October 2023.

33.     On or about May 13, 2024, Kaiser sent email notices to Plaintiffs and the Class ("Email Notice"). The Email Notice stated that "On October 25, 2023, Kaiser Permanente determined that certain online technologies (commonly known as cookies or pixels) installed on our websites and mobile applications may have transmitted personal information to our third-party vendors Google, Microsoft Bing, and X (Twitter) when members and patients accessed our websites or mobile applications. These technologies are sometimes used by organizations to understand how consumers interact with websites and mobile applications."

10

34.     According to the Email Notice, "The information that may have been involved was limited to: IP address, name, information that could indicate you were signed into a Kaiser Permanente account or service, information showing how you interacted with and navigated through our website or mobile applications, and search terms used in the health encyclopedia. Detailed information concerning Kaiser Permanente account credentials (username and password), Social Security numbers, financial account information and credit card numbers were not included in the information involved."

35.     With regard to the steps taken by Kaiser with regard to the Data Breach, the Email Notice stated that "We conducted a voluntary internal investigation into the use of these online technologies, and subsequently removed these online technologies from our websites and mobile applications. In addition, Kaiser Permanente has implemented additional measures with the guidance of experts to safeguard against recurrence of this type of incident."

36.     Finally, the Email Notice encouraged Plaintiffs and the Class " it is always advisable to remain vigilant against attempts at identity theft or fraud, which includes reviewing online and financial accounts, credit reports, and Explanations of Benefits for suspicious activity. This is a best practice for all individuals. … If you are concerned about identity theft and would like more information on ways to protect yourself, visit the Federal Trade Commission's Identity Theft website at https://www.identitytheft.gov."

37.     Yet, despite knowing many patients were in danger, Kaiser did nothing to warn Class Members until almost seven months after the Data Breach occurred. During this time, unauthorized third parties had free reign to surveil and defraud their unsuspecting victims. Kaiser proceeded business as usual without giving class members the information they needed to protect themselves against fraud and identity theft.

38.     Moreover, during the time period of the release, Class Members, including the Plaintiffs, began noticing advertisements on social media sites, such as Facebook and Instagram for illnesses that they previously had only disclosed to their physicians. These advertisements clearly indicate that not only was medical information released to third parties, but the information was viewed, and then acted upon.

39.     It is apparent from the Email Notice, reports, and subsequent filings with the United States Department of Health and Human Services and the California Attorney General's office, that Kaiser stores the personal medical information of the Class Members and released them to unauthorized third parties.

40.     Kaiser failed to adequately safeguard Plaintiffs and Class Members' Personal and Medical Information, allowing unauthorized third parties to access this wealth of priceless information for an undetermined period of time prior to October 2023, and possibly continuing to date, without warning the victims, the Class Members, to be on the lookout.

41.     Kaiser failed to spend sufficient resources on making sure that its patients' personal medical information are secure and released only to authorized persons.

42.     Kaiser had obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), the Confidentiality of Medical Information Act ("CMIA"), reasonable industry standards, its own contracts with its patients and employees, common law, and its representations to Plaintiffs and Class members, to keep their Personal and Medical Information confidential and to protect the information from unauthorized access.

43.     Plaintiffs and Class members provided their Personal and Medical Information to Kaiser with the reasonable expectation and mutual understanding that it would comply with its obligations to keep such information confidential and secure from unauthorized access.

44.     Indeed, as discussed below, Kaiser promised Plaintiffs and Class members that it would do just that.

**B.     Kaiser Expressly Promised to Protect Personal and Medical Information**

45.     Kaiser provides all patients, including Plaintiffs and Class members, its Notice of Privacy Practices, which states that:

II. ABOUT OUR RESPONSIBILITY TO PROTECTYOUR PHI

By law, we must

1. protect the privacy of your PHI;
2. tell you about your rights and our legal duties with respect to your PHI;
3. notify you if there is a breach of your unsecured PHI; and

4. tell you about our privacy practices and follow our notice currently in effect.

We take these responsibilities seriously and, have put in place administrative safeguards(such as security awareness training and policies and procedures), technical safeguards(such as encryption and passwords), and physical safeguards (such as locked areas and requiring badges) to protect your PHI and, as in the past, we will continue to take appropriate steps to safeguard the privacy of your PHI.[3]

46.     Likewise, Kaiser's Notice of Privacy Practices also states that:

VI. ALL OTHER USES AND DISCLOSURES OFYOUR PHI REQUIRE YOUR PRIOR WRITTENAUTHORIZATION

Except for those uses and disclosures described above, we will not use or disclose your PHI without your written authorization. Some instances in which we may request your authorization for use or disclosure of PHI are:

Marketing:
We may ask for your authorization in order to provide information about  products and services that you may be interested in purchasing or using. Note that marketing communications do not include our contacting you with information about treatment alternatives, prescription drugs you are taking or health-related products or services that we offer or that are available only to our health plan enrollees. Marketing also does not include any face-to-face discussions you may have with your providers about products or services.

Sale of PHI:
We may only sell your PHI if we received your prior written authorization to do so.

Psychotherapy Notes:
On rare occasions, we may ask for your authorization to use and disclose "psychotherapy notes". Federal privacy law defines "psychotherapy notes" very specifically to mean notes made by a mental health professional recording conversations during private or group counseling sessions that are maintained separately from the rest of your medical record. Generally, we do not maintain psychotherapy notes, as defined by federal privacy law.

When your authorization is required and you authorize us to use or disclose your PHI for some purpose, you may revoke that authorization by notifying us in writing at any time. Please note that the revocation will not apply to any authorized use or

---

[3] Kaiser, "Notice of Privacy Practices," Effective Date: September 22, 2023, https://healthy.kaiserpermanente.org/southern-california/privacy-practices , last visited on April 26, 2024.

disclosure of your PHI that took place before we received your revocation. Also, if you gave your authorization to secure a policy of insurance, including health care coverage from us, you may not be permitted to revoke it until the insurer can no longer contest the policy issued to you or a claim under the policy.[4]

47.    Notwithstanding the foregoing assurances and promises, Kaiser failed to protect the Personal and Medical Information of Plaintiffs and other Class members from releasing their information to unauthorized third parties, as conceded by Kaiser in the Notice.

48.    If Kaiser truly understood the importance of safeguarding patients' Personal and Medical Information, it would acknowledge its responsibility for the harm it has caused, and would compensate class members, provide long-term protection for Plaintiffs and the Class, agree to Court-ordered and enforceable changes to its policies and procedures, and adopt regular and intensive training to ensure that an unauthorized release like this never happens again.

49.    That information is now in the hands unauthorized third parties who will use it if given the chance. In fact, Plaintiff Vital already has begun receiving direct solicitations and advertisements from third parties regarding medical conditions she sought treatment for. Much of this information is unchangeable and loss of control of this information is remarkably dangerous to consumers.

**C.    Kaiser had an Obligation to Protect Personal and Medical Information under Federal and State Law and the Applicable Standard of Care**

50.    Kaiser is an entity covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"),  and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

51.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

---

[4] *Id.*

14

52.    HIPAA's Security Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is held or transferred in electronic form.

53.    HIPAA requires Kaiser to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

54.    "Electronic protected health information" is "individually identifiable health information . . . that is (i) Transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

55.    HIPAA's Security Rule requires Kaiser to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

56.    HIPAA also required Kaiser to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information."  45 C.F.R. § 164.306(e).

57.    HIPAA also required Kaiser to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

58.    Kaiser was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable

and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

59.    In addition to their obligations under federal and state laws, Kaiser owed a duty to Class Members whose Personal and Medical Information was entrusted to Kaiser to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Kaiser owed a duty to Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its systems, policies, procedures, and the personnel responsible for them, adequately protected the Personal and Medical Information of the Class Members.

60.    Kaiser owed a duty to Class Members whose Personal and Medical Information was entrusted to Kaiser to design, maintain, and test its systems, policies, and procedures to ensure that the Personal and Medical Information in Kaiser's possession was adequately secured and protected.

61.    Kaiser owed a duty to Class Members whose Personal and Medical Information was entrusted to Kaiser to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in their possession, including adequately training its employees and others who accessed Personal Information within its computer systems on how to adequately protect Personal and Medical Information.

62.    Kaiser owed a duty to Class Members whose Personal and Medical Information was entrusted to Kaiser to implement processes that would detect an unauthorized access in a timely manner.

63.    Kaiser owed a duty to Class Members whose Personal and Medical Information was entrusted to Kaiser to act upon data security warnings and alerts in a timely fashion.

64.    Kaiser owed a duty to Class Members whose Personal and Medical Information was entrusted to Kaiser to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

First Amended Class Action Complaint

65.     Kaiser owed a duty to Class Members whose Personal and Medical Information was entrusted to Kaiser to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft or access by unauthorized third parties because such an inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Kaiser.

66.     Kaiser owed a duty to Class Members whose Personal and Medical Information was entrusted to Kaiser to disclose in a timely and accurate manner when an unauthorized access occurred.

67.     Kaiser owed a duty of care to Class Members because they were foreseeable and probable victims of any inadequate data security practices.

**D.     An Unauthorized Release like this Results in Debilitating Losses to Consumers**

68.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[5] Unauthorized third parties can leverage Plaintiffs' and Class members' Personal and Medical Information that was obtained in the unauthorized release to commit thousands-indeed, millions-of additional crimes, including opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services and government benefits, using Class Members' Personal Information to file fraudulent tax returns, using Class Members' health insurance information to rack up massive medical debts in their names, using Class Members' health information to target them in other phishing and hacking intrusions based on their individual health needs, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest. Even worse, Class Members could be arrested for crimes identity thieves have committed.

---

[5] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info.    Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

First Amended Class Action Complaint

69.     Personal and Medical Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black-market for years.

70.     This is not just speculative. As the FTC has reported, if unauthorized third parties get access to Personal and Medical Information, they *will* use it.[6]

71.     Unauthorized third parties may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years**. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[7]

72.     Medical identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more "than identity thefts involving banking and finance, the government and the military, or education."[8]

73.     "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[9]

74.     As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI can go from $20 say up to—we've seen $60 or $70

---

[6] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[7] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu (emphasis added).

[8] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

[9] *Id.*

[(referring to prices on dark web marketplaces)].["10] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[11]

75.    As a direct and proximate result of the unauthorized release, Plaintiffs and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  Plaintiffs and the Class must now take the time and effort to mitigate the actual and potential impact of the unauthorized release on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

76.    Plaintiffs and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

a. Trespass, damage to, and theft of their personal property including Personal and Medical Information;

b. Improper disclosure of their Personal and Medical Information;

c. The imminent and certainly impending injury flowing from potential fraud  and identity theft posed by their Personal and  Medical Information being placed in the hands of criminals and having been already misused;

d. The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

e. Damages flowing from Defendant's untimely and inadequate notification of the unauthorized release;

f.  Loss of privacy suffered as a result of the unauthorized release, including the harm of knowing unauthorized third parties have their Personal and Medical Information and that

---

[10] ID Experts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat

[11] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015,https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global- state-of-information-security-survey-2015.pdf

19

fraudsters have already used that information to initiate spam calls to members of the Class;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the unauthorized release;

h. Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market;

i.    The loss of use of and access to their credit, accounts, and/or funds;

j.    Damage to their credit due to fraudulent use of their Personal and Medical Information; and

k. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

77.    Moreover, Plaintiffs and Class have an interest in ensuring that their information, which remains in the possession of Kaiser, is protected from further unauthorized release by the implementation of security measures and safeguards.

78.    Even if Kaiser would acknowledge the harm caused by the unauthorized release by recommending that Plaintiffs and Class Members review the statements they receive from their healthcare providers and health insurer, any amount of identity theft repair and monitoring is woefully inadequate to protect Plaintiffs and Class members from a lifetime of identity theft risk and worse, it does nothing to reimburse Plaintiffs and Class members for the injuries they have already suffered.

79.    All this is made worse because Plaintiffs and the Class Members know that their information is widely shared through these third parties. They have already received solicitations and advertisements for various medical conditions that were previously only disclosed to their physicians on the Kaiser website or web application.

**E.    Meta's Tracking Technology on the Kaiser Platform**

80.    Meta is one of the largest advertising companies in the country. To date, Meta generates nearly 98% of its revenue through advertising bringing in a grand total of $114.93 billion.

20

81.    Meta's advertising business began back in 2007 with the creation of "Facebook Ads," which was marketed as a "completely new way of advertising online" that would allow "advertisers to deliver more tailored and relevant ads."

82.    Today, Meta provides advertising on its own platforms, such as Facebook and Instagram, as well as websites outside these apps through the Facebook Audience Network. Facebook alone has more than 3 billion active users.[12]

83.    Meta's advertising business has been extremely successful due, in large part, to Meta's ability to target people at a granular level. "Among many possible target audiences, [Meta] offers advertisers," for example, "1.5 million people 'whose activity on Facebook suggests that they're more likely to engage with/distribute liberal political content' and nearly seven million Facebook users who 'prefer high-value goods in Mexico.'"

84.    Given the highly specific data used to target specific users, it is no surprise that millions of companies and individuals utilize Meta's advertising services. Meta generates substantially all of its revenue from selling advertisement placements:

| Year | Total Revenue | Ad Revenue | % Ad Revenue |
|------|--------------|-----------|--------------|
| 2021 | $117.93 billion | $114.93 billion | 97.46% |
| 2020 | $85.97 billion | $84.17 billion | 97.90% |
| 2019 | $70.70 billion | $69.66 billion | 98.52% |
| 2018 | $55.84 billion | $55.01 billion | 98.51% |

85.    One of Meta's most powerful advertising tools is the Meta Pixel, formerly known as the Facebook Pixel, which launched in 2015 and its software development kit (SDK).

86.    Meta touted the Meta Pixel as "a new way to report and optimize for conversions, build audiences and get rich insights about how people use your website." According to Meta, to use the Meta Pixel an advertiser need only "place a single pixel across [its] entire website to report and optimize for conversions" so that the advertiser could "measure the effectiveness of [its] advertising by understanding the action people take on [its] website." The Meta Pixel is incorporated on 6.7 million websites, including Kaiser's website.

---

[12] https://www.statista.com/statistics/264810/number-of-monthly-active-facebook-users-worldwide/ last visited on June 9, 2024.

First Amended Class Action Complaint

87.    The Meta Pixel is a snippet of code embedded on a third-party website that tracks a users' activity as the users navigate through a website. As soon as a user takes any action on a webpage that includes the Meta Pixel, the code embedded in the page re-directs the content of the user's communication to Meta while the exchange of the communication between the user and website provider is still occurring.

88.    Through this technology, Meta intercepts each page a user visits, what buttons they click, as well as specific information they input into the website and what they searched. The Meta Pixel sends each of these pieces of information to Meta with other identifiable information, such as the users IP address. Meta stores this data on its own server, in some instances, for years on end.

89.    This data is often associated with the individual users' Facebook account. For example, if the user is logged into their Facebook account when the user visits Kaiser's website, Meta receives third party cookies allowing Meta to link the data collected by the Meta Pixel to the specific Facebook user.

90.    Meta can also link the data to a specific user through the "Facebook Cookie." The Facebook Cookie is a workaround to recent cookie-blocking techniques, including one developed by Apple, Inc., to track users, including Facebook users.

91.    Lastly, Meta can link user data to individual users through identifying information collected through the Meta Pixel through what Meta calls "Advanced Matching." There are two forms of Advanced Matching: manual matching and automatic matching. Using Manual Advanced Matching the website developer manually sends data to Meta to link users. Using Automatic Advanced Matching, the Meta Pixel scours the data it receives to search for recognizable fields, including name and email address to match users to their Facebook accounts.

92.    Importantly, even if the Meta Pixel collects data about a non-Facebook user, Meta still retains and uses the data collected through the Meta Pixel in its analytics and advertising services. These non-users are referred to as having "shadow profiles" with Meta.

93.    At the time Plaintiffs used the Kaiser Platform, they maintained active Facebook and Instagram accounts. Plaintiffs accessed the Kaiser Platform from the same device they used to visit

22

Facebook and Instagram, and Meta associated the data it collected about them from the Kaiser Platform with their Facebook and Instagram accounts.

94.    Meta offers an analogous mobile version of the Meta Pixel known as a software development kit (SDK) to app developers. Meta's SDK allows app developers "to track events, such as a person installing your app or completing a purchase." By tracking these events developers can measure ad performance and build audiences for ad targeting.

95.    Meta's SDK collects three types of App Events. Automatically Logged Events "logs app installs, app sessions, and in-app purchases." Standard Events are "popular events that Facebook has created for the app." Custom Events are "events [the app developer] create that are specific to [the] app."

96.    Once the data intercepted through the Meta Pixel or SDK is processed, Meta makes this data available through its Events Manager, along with tools and analytics to reach these individuals through future Facebook ads. For instance, this data can be used to create "custom audiences" to target the user, as well as other Facebook users who match members' of the audiences' criteria.

97.    In addition to using the data intercepted through the Meta Pixel and the SDK to provide analytics services, Meta uses this data to improve its personalized content delivery, advertising network, and machine-learning algorithms, including by improving its ability to identify and target users.

98.    Meta has no way to limit or prohibit the use of data collected through the Meta Pixel and its SDK given Meta's open systems and advanced algorithms.

99.    According to leaked internal Meta documents, one employee explained "[y]ou pour that ink [i.e., data] into a lake of water . . . and it flows . . . everywhere . . . How do you put that ink back in the bottle? How do you organize it again, such that it only flows to the allowed places in the lake?"

100.    In these same leaked documents, another employee explained Meta does "not have an adequate level of control and explainability over how our systems use data, and thus we can't confidently make controlled policy changes or external commitments such as 'we will not use X

23

data for Y purpose.' And yet, that is exactly what regulators expect us to do, increasing our risk of mistakes and misrepresentation." Thus, once the data enters the Meta system, either through its SDK or Pixel, the data can be used for any and all purposes.

101.     Meta's own employees confirmed no one at Meta can state confidently where all the data about a user is stored and used. In a recent court hearing as part of the Cambridge Analytica scandal of 2018, Meta's own engineers testified there was not a "single person" at Meta who could answer that question.

102.     The Meta Pixel and SDK are incorporated on the Kaiser Platform. As a result, Meta intercepted users' interactions on the Kaiser Platform. For instance, Meta received users' specific responses to medical history and other health questions Kaiser asked in connection with a medical consultation. This included highly sensitive medical information.

103.     Plaintiffs provided their PII, health information, and other sensitive data to Kaiser to obtain medical treatment and/or advice, this information was sent to Meta.

104.     Plaintiffs did not consent to the interception of their data by Meta. Meta's interception of Plaintiffs' PII, health data, and other highly sensitive information without their consent is an invasion of privacy and violates several laws, including CIPA.

**F.     Google's Tracking Technology on the Kaiser Platform**

105.     Google is one of the largest advertising companies in the country. To date, Google generates nearly 77.8% of its revenue through advertising bringing in a grand total of $305.6 billion.

106.     Google's advertising business has been extremely successful due, in large part, to Google's ability to target people at a granular level.

107.     Given the highly specific data used to target specific users, it is no surprise that millions of companies and individuals utilize Google's advertising services. Google generates substantially all of its revenue from selling advertisement placements.

108.     Google embeds a code on a third-party website that tracks a users' activity as the users navigate through a website. As soon as a user takes any action on a webpage that includes this code, the code embedded in the page re-directs the content of the user's communication to Google while the exchange of the communication between the user and website provider is still occurring.

24

109.    Through this technology, Google intercepts each page a user visits, what buttons they click, as well as specific information they input into the website and what they searched. The code sends each of these pieces of information to Google with other identifiable information, such as the users IP address. Google stores this data on its own server, in some instances, for years on end.

110.    This data is often associated with the individual users' Google account. For example, if the user is logged into their Google account when the user visits Kaiser's website, Google receives third party cookies allowing Google to link the data collected by the code to the specific Google user.

111.    Importantly, even if the code collects data about a non-Google user, Google still retains and uses the data collected through the code in its analytics and advertising services. These non-users are referred to as having "shadow profiles" with Google.

112.    At the time Plaintiffs used the Kaiser Platform, they maintained active Google accounts. Plaintiffs accessed the Kaiser Platform from the same device they used to visit Google, and Google associated the data it collected about them from the Kaiser Platform with their Google accounts.

113.    Google's codes are incorporated on the Kaiser Platform. As a result, Google intercepted users' interactions on the Kaiser Platform. For instance, Google received users' specific responses to medical history and other health questions Kaiser asked in connection with a medical consultation. This included highly sensitive medical information.

114.    Plaintiffs provided their PII, health information, and other sensitive data to Kaiser to obtain medical treatment and/or advice, this information was sent to Google.

115.    Plaintiffs did not consent to the interception of their data by Google. Google's interception of Plaintiffs' PII, health data, and other highly sensitive information without their consent is an invasion of privacy and violates several laws, including CIPA.

G.    **Plaintiffs and the Class Members do not consent to Google and Meta's Conduct**

116.    Plaintiffs and Class members had no way of knowing that Google and Meta were intercepting their communications when interacting with the Kaiser Platform because their software is inconspicuously incorporated in the background.

25

117.    This conduct is all the more egregious given the nature of the information entered into the Kaiser Platform, e.g., PII, requests for prescriptions, and identifiable medical information, among other things. Plaintiffs and Class members would not expect this information to be intercepted without their consent.

118.    This is especially true given Kaiser's consistent representations that this information would remain private and confidential as discussed above. Kaiser repeats these assurances throughout its privacy policy. Accordingly, users' "data is held to even stricter privacy standard than required by CCPA (Health Insurance Portability and Accountability Act ("HIPAA") and California Confidentiality of Medical Information Act, as some examples.)"

119.    Accordingly, Plaintiffs and Class members did not consent to Defendants' conduct.

**H.    Plaintiffs and the Class have a Reasonable Expectation of Privacy in their User Data**

120.    Plaintiffs and Class members have a reasonable expectation of privacy in their communications on the Kaiser Platform, including their health information.

121.    Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.

122.    For example, a recent study by Consumer Reports shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them. Moreover, according to a study by Pew Research Center, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.

123.    Users act consistent with these preferences. Following a new rollout of the iPhone operating software—which asks users for clear, affirmative consent before allowing companies to track users—85% of worldwide users and 94% of U.S. users chose not to share data when prompted.

124.    Another recent study by DataGrail revealed that 67% of people were willing to pay $100 or more annually to keep their information out of the hands of companies and the government.

1 The same study revealed that 75% of people would abandon brands that do not take care of their

2 data.

3      125.    Other privacy law experts have expressed concerns about the disclosure to third

4 parties of a users' intimate health data. For example, Dena Mendelsohn—the former Senior Policy

5 Counsel at Consumer Reports and current Director of Health Policy and Data Governance at Elektra

6 Labs—explained that having your personal health information disseminated in ways you are

7 unaware of could have serious repercussions, including affecting your ability to obtain life insurance

8 and how much you pay for that coverage, increase the rate you're charged on loans, and leave you

9 vulnerable to workplace discrimination.

10      126.    This data is also extremely valuable. According to Experian, health data is a "gold

11 mine" for healthcare companies and clinicians.

12      127.    Consumers' health data, including what prescriptions they have, are extremely

13 profitable. For instance, Datarade.ai advertises access to U.S. customers names, addresses, email

14 addresses, telephone numbers who bought brand name medicine. The starting price for access to

15 just some of this data was $10,000. Other companies, like Pfizer, spend $12 million annually to

16 purchase health data and the medical data industry itself was valued at over $2.6 billion back in

17 2014.

18      128.    Defendants' surreptitious interception of Plaintiffs' and Class members' private

19 communications, including PII, health information, and other sensitive data violates Plaintiffs' and

20 Class members' privacy interests.

21                                   **V.**

22                 **TOLLING, CONCEALMENT, AND ESTOPPEL**

23      129.    The applicable statutes of limitation have been tolled as a result of Defendants'

24 knowing and active concealment and denial of the facts alleged herein.

25      130.    Meta and Google's software was secretly incorporated into the Kaiser Platform,

26 providing no indication to users that they were interacting with sites that shared their data, including

27 PII and medical information, with third parties.

28

27

131.    Google and Meta had exclusive knowledge that the Kaiser Platform incorporated its software, yet failed to disclose that fact to users, or that by interacting with the Kaiser Platform, Plaintiffs' and Class members' sensitive data, including PII and health data, would be intercepted by third parties.

132.    Plaintiffs were, at all times, diligent in using the Kaiser Platform. Nevertheless, Plaintiffs and Class members could not with due diligence have discovered the full scope of Google and Meta's conduct, including because it is highly technical and there were no disclosures or other indication that would inform a reasonable consumer that third parties, including Google and Meta, were intercepting, data from the Kaiser Platform.

133.    The earliest Plaintiffs and Class members could have known about Google and Meta's conduct was shortly before the filing of this Complaint through the investigation of counsel.

134.    Google and Meta were under a duty to disclose the nature and significance of their data collection practices but did not do so. Google and Meta are therefore estopped from relying on any statute of limitations under the discovery rule.

135.    Additionally, Google and Meta engaged in fraudulent conduct to prevent Plaintiffs and Class members from discovering the interception of their data. Kaiser misled Plaintiffs and Class members to believe their data, including health information and PII, would not be intercepted.

136.    Kaiser represented to Plaintiffs and Class members that they applied even stronger restrictions on the sharing of data than those imposed by HIPAA and the CMIA. It also promised Plaintiffs and Class members that their "personal information" would not be shared. No Defendant disclosed the misconduct alleged herein.

137.    Meta concealed in its Privacy Policy that it collects PII and medical information from Kaiser Platform users, as well as any form of medical information from any source. Meta maintains a Privacy Policy through which it purports to help users "understand what information we collect, and how we use and share it." Meta claims it is "important to [Meta] that [users] know how to control [their] privacy."[13]

---

[13] Privacy Policy, META PLATFORMS, INC. (effective December 27, 2023), https://www.facebook.com/privacy/policy/ last visited on June 8, 2024.

First Amended Class Action Complaint

138.    This was false. Meta does not disclose, in this purportedly comprehensive policy, that it will collect medical information and PII from Kaiser users. Quite the opposite, Meta represents in its Privacy Policy it only collects "information when you visit [a] site or app" when its "partners . . . have the right to collect, use and share your information before giving it to us." *Id.* This, combined with Kaiser's own representations, would lead Kaiser users to believe their medical information and PII was not collected or used by Meta because Kaiser promised and disavowed that it would share this type of information.

139.    Google too concealed its own data interception practices. Like Meta, Google maintains a Privacy Policy that states "When you use our services, you're trusting us with your information. We understand this is a big responsibility and work hard to protect your information and put you in control," such that it provides a policy that "is meant to help you understand what information we collect, why we collect it, and how you can update, manage, export, and delete your information.."[14] The only sentence in this long policy that could remotely apply to the collection of Kaiser users' data states "Google works with businesses and organizations in a variety of ways. We refer to these businesses and organizations as "partners". For example, over 2 million non-Google websites and apps partner with Google to show ads." Google could disclose, but concealed, who these "partners" were and that the vague similar information it referenced that it may collect included highly sensitive medical information and PII. Google did not, choosing to conceal this information to continue collecting it undetected. *Id.*

140.    Plaintiffs and Class members were not aware that Google and Meta intercepted their data, including PII and health information.

141.    Plaintiffs and Class members exercised due diligence to uncover the facts alleged herein and did not have actual or constructive knowledge of Defendants' misconduct by virtue of their fraudulent concealment.

142.    Accordingly, all statutes of limitations are tolled under the doctrine of fraudulent concealment.

---

[14] Privacy Policy, Google (effective March 28, 2024), https://policies.google.com/privacy?hl=en-US last visited on June 8, 2024.

# VI.

## CLASS ACTION ALLEGATIONS

143.    Class Representative Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.  The putative class that Class Representative Plaintiffs seek to represent is composed of: "All natural persons in the United States who used the Kaiser Platform and whose communications and/or data were intercepted by Defendants, and who received a Notice of Data Breach in May of 2024." Excluded from the Class are the natural persons who are directors, and officers, of the Defendants, as well as Plaintiffs' counsel, judges, clerks, and other supporting staff of the Superior Court of California by and for the County of Alameda.  Class Representative Plaintiffs expressly disclaims that he is seeking a class-wide recovery for personal injuries attributable to Defendant's conduct.

144.    Plaintiffs are informed and believe that the members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of the Class members is unknown to Class Representative Plaintiffs at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendants. According to Kaiser's filings with the United States Department of Health and Human Services, 13.4 million consumers, including 9.6 million Californians, were affected by this intentional sale of confidential medical information.

145.    There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Class Representative Plaintiffs' claims are typical of the members of the class, and Class Representative Plaintiffs can fairly and adequately represent the interests of the Class.

146.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    Whether Defendants failed to adequately safeguard Plaintiffs and the Class's Personal and Medical Information;

(b)    Whether Defendants sold information to third party advertisers;

(c)    Whether the type of information sold by Defendants to third party advertisers constitutes confidential medical information as defined by Civil Code §56.05(j);

(d)    Whether Defendants failed to protect Plaintiffs and the Class's Personal and Medical Information;

30

(e)    Whether Defendants' policy of selling data gathered from the Class on its websites and web applications violated the FTC Act, HIPAA, CMIA, and/or Defendants' other duties;

(d)    Whether Defendants violated the data security statutes and notification statutes applicable to Plaintiffs and the Class;

(e)    Whether Defendants failed to notify Plaintiffs and members of the Class about the unauthorized release expeditiously and without unreasonable delay after the unauthorized release was discovered;

(f)    Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard Class Members' Personal and Medical Information properly and as promised;

(g)    Whether Defendants entered into implied contracts with Plaintiffs and the members of the Class that included contract terms requiring Defendants to protect the confidentiality of Personal and Medical Information and have reasonable security measures;

(h)    Whether Defendants violated the consumer protection statutes and state medical privacy statutes applicable to Plaintiffs and the Class;

(i)    Whether Defendants failed to notify Plaintiffs and Class Members about the unauthorized release as soon as practical and without delay after the unauthorized release was discovered;

(j)    Whether Defendants' conduct described herein constitutes a breach of their implied contracts with Plaintiffs and the Class;

(k)    Whether Plaintiffs and the members of the Class are entitled to damages as a result of Defendants' wrongful conduct;

(l)    What equitable relief is appropriate to redress Defendants' wrongful conduct;

(m)    What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Plaintiffs and members of the Class;

(n)    Whether Defendants acted negligently in failing to safeguard Plaintiffs' and the Class's Personal and Medical Information, including whether its conduct constitutes negligence;

(o)    Whether Defendants acted negligently in failing to safeguard Plaintiffs' and the Class's Personal and Medical Information, including whether its conduct constitutes negligence *per se*;

(p)    Whether Defendants violated Plaintiffs' and Class members' privacy rights;

(q)    Whether Defendants' acts and practices violated the Common Law Invasion of Privacy;

(r)    Whether Defendants were unjustly enriched;

(s)    Whether Defendants' acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq;

(t)    Whether Plaintiffs and the Class members are entitled to equitable relief, including, but not limited to, injunctive relief, restitution, and disgorgement; and

31

(u)    Whether Plaintiffs and the Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

Class Representative Plaintiffs' claims are typical of those of the other Class members because Class Representative Plaintiffs, like every other Class member, were exposed to virtually identical conduct and is entitled to nominal damages of one thousand dollars ($1,000) per violation pursuant to Civil Code §§ 56.101 and 56.36(b)(1).

147.    Class Representative Plaintiffs will fairly and adequately protect the interests of the Class.  Moreover, Class Representative Plaintiffs have no interest that is contrary to or in conflict with those of the Class they seek to represent during the Class Period.  In addition, Class Representative Plaintiffs have retained competent counsel experienced in class action litigation to further ensure such protection and intend to prosecute this action vigorously.

148.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendant in the State of California and would lead to repetitious trials of the numerous common questions of fact and law in the State of California.  Class Representative Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

149.    Proper and sufficient notice of this action may be provided to the Class members through direct mail.

150.    Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class.  Absent certification of this action as a class action, Class Representative Plaintiffs and the members of the Class will continue to be damaged by the unauthorized release of their individual identifiable medical information.

//

32

First Amended Class Action Complaint

**VII.**

**CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS**

151.    California substantive laws apply to every member of the Class. California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Classes under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, Art. IV. § 1 of the U.S. Constitution. California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and Class members, thereby creating state interests to ensure that the choice of California state law is not arbitrary or unfair.

152.    Meta and Google maintain their principal places of business in California and conduct substantial business in California, such that California has an interest in regulating Meta and Google's conduct under its laws. Meta also selected California law as the law to govern all disputes with their customers in their respective terms of service. Defendants Meta and Google's decision to reside in California and avail themselves of California's laws renders the application of California law to the claims herein constitutionally permissible.

153.    The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here given Defendants' locations and the location of the conduct at issue than any other interested state.

**VIII.**

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Violations of the Confidentiality of Medical Information Act, Civil Code § 56, *et seq.*)**
**(Against All Defendants)**

154.    Plaintiffs and the Class incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

155.    Kaiser is a "provider of health care," within the meaning of Civil Code § 56.05(m), and maintained and continues to maintain "medical information," within the meaning of Civil Code § 56.05(j), of "patients" of the Kaiser, within the meaning of Civil Code § 56.05(k).

First Amended Class Action Complaint

156.    Plaintiffs and the Class are "patients" of Kaiser within the meaning of Civil Code § 56.05(k).    Furthermore, Plaintiffs and the Class, as patients of Kaiser, had their individually identifiable "medical information," within the meaning of Civil Code § 56.05(j), stored onto Kaiser's server, and received treatment at one of Kaiser's hospital, satellite, or urgent care locations on or before October 2023.    Plaintiffs and the Class also utilized Kaiser's website and/or web application to research medical conditions, make appointments with their physicians for specific medical conditions,  email their physicians regarding medical questions they had, amongst other medical uses.

157.    On April 26, 2027, Plaintiffs and the Class were informed through an article on Techcrunch, along with other media outlets that Kaiser released to "third-party advertisers, including Google, Microsoft and X (formerly Twitter)" Plaintiffs' and the Class's individual identifiable "medical information," within the meaning of Civil Code § 56.05(j),[15] including "member names and IP addresses, as well as information that could indicate if members were signed into a Kaiser Permanente account or service and how members "interacted with and navigated through the website and mobile applications, and search terms used in the health encyclopedia."[16]

158.    A similar Email Notice was sent by Kaiser to Plaintiffs and the Class on or about May 13, 2024.

159.    Despite realizing the unauthorized release of Plaintiffs' personal medical information, Kaiser belatedly informed Plaintiffs and the Class Members about the approximate duration of the issue in its policies and procedures that allowed unauthorized individual(s) access to Plaintiffs' and the Class Members' personal medical information.

---

[15] Pursuant to Civil Code § 56.05(j), "Medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care...regarding a patient's medical history, mental or physical condition, or treatment.  'Individually Identifiable' means that the medical information includes or contains any elements of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity."

[16] Whittaker, Zack. "Health insurance giant Kaiser will notify millions of a data breach after sharing patients' data with advertisers," https://techcrunch.com/2024/04/25/kaiser-permanente-health-plan-millions-data-breach/ last accessed on April 26, 2024.

160.    As a result of Kaiser's above-described conduct, Plaintiffs and the Class have suffered damages from the unauthorized release of their individual identifiable "medical information" made unlawful by Civil Code §§ 56.10 and 56.101.

161.    Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Plaintiffs individually and on behalf of the Class seek nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1); and Plaintiffs individually seek actual damages suffered, if any, pursuant to Civil Code § 56.36(b)(2).

**SECOND CAUSE OF ACTION**
**(Violations of the CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against All Defendants)**

162.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

163.    Defendant Kaiser is organized under the laws of California, while Defendants Meta and Google have principal offices and do business in California. Defendants violated California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in the UCL, including, but not limited to, the following:

    a.  by representing and advertising that they would maintain adequate data privacy and security practices and procedures to safeguard their Personal and Medical Information from unauthorized disclosure, release, data breach, and theft; representing  and advertising that they did and would comply with the requirement of relevant federal and state laws pertaining to the privacy and security of the Class's Personal and Medical Information; and omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class's Personal and Medical Information;

b.  by soliciting and collecting Class members' Personal and Medical Information with knowledge that the information would not be adequately protected; and by storing Plaintiffs' and Class members' Personal and Medical Information in an unsecure environment;

c.  by violating the privacy and security requirements of HIPAA, 42 U.S.C. §1302d, *et seq.*;

d.  by violating the CIPA; and

e.  by violating the CMIA, Cal. Civ. Code § 56, *et seq.*

164.    These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. Defendants' practice was also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws like the CIPA, FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1302d, *et seq.*, and the CMIA, Cal. Civ. Code § 56, *et seq.*

165.    As a direct and proximate result of Defendants' unfair and unlawful practices and acts, Plaintiffs and the Class were injured and lost money or property, including but not limited to the overpayments Defendants received to take reasonable and adequate security measures (but did not), the loss of their legally protected interest in the confidentiality and privacy of their Personal and Medical Information, and additional losses described above. In addition, Defendants treated the personal and medical information of Plaintiffs and the Class as their own property, and sold it for profit, causing a loss of money and property to Plaintiffs and the Class.

166.    Defendants knew or should have known that its sale of information to third party advertisers would violate the CIPA, CMIA, HIPAA and the FTC, and would fail to safeguard Plaintiffs and Class members' Personal and Medical Information. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were intentional, knowing and willful, and/or wanton and reckless with respect to the rights of the Class.

167.    The conduct and practices described above emanated from California where decisions related to Defendants' advertising and data security were made.

168.    Plaintiffs seek relief under the UCL, including restitution to the Class of money or property that the Defendants may have acquired, including all monies it received through the sale of this medical information, by means of Defendants' deceptive, unlawful, and unfair business practices, declaratory relief, attorney fees, costs and expenses (pursuant to Cal. Code Civ. P. § 1021.5), and injunctive or other equitable relief.

## THIRD CAUSE OF ACTION
### (NEGLIGENCE)
### (Against Defendant Kaiser)

169.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

170.    Kaiser required Plaintiffs and Class Members to submit non-public, sensitive PII and other data via its contracts with the respective health care providers.

171.    Kaiser had, and continues to have, a duty to Plaintiffs and Class Members to exercise reasonable care in safeguarding and protecting their Private Information and other data. Kaiser also had, and continues to have, a duty to use ordinary care in activities from which harm might be reasonably anticipated, such as in the collection, storage and protection of Private Information and other data within their possession, custody and control and that of its vendors.

172.    Kaiser's duty to use reasonable security measures arose as a result of the special relationship that existed between Kaiser and patients and former patients. The special relationship arose because Plaintiffs and the Members of the Class had entrusted Kaiser with their Private Information and other data by virtue of being patients at the respective health care providers with which Kaiser had contracted to provide services. Only Kaiser was in a position to ensure that its systems were sufficient to protect against the harm to Plaintiffs and the Class Members from a data breach.

173.    Kaiser violated these standards and duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs and Class Members' Private Information and other data by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the Private Information and other data entrusted to it,

37

including Plaintiffs' and Class Members' Private Information and other data as aforesaid. It was reasonably foreseeable to Kaiser that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' Private Information and other data by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class Members' Private Information and other data.

174.    Kaiser, by and through its negligent actions, inaction, omissions, and want of ordinary care, unlawfully breached its duties to Plaintiffs and Class Members by, inter alia, failing to exercise reasonable care in safeguarding and protecting Plaintiffs and Class Members' Private Information and other data within their possession, custody and control.

175.    Kaiser, by and through its negligent actions, inactions, omissions, and want of ordinary care, further breached its duties to Plaintiffs and Class Members by failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit their processes, controls, policies, procedures, protocols, and software and hardware systems for complying with the applicable laws and safeguarding and protecting their Private Information and other data.

176.    But for Kaiser's negligent breach of the above-described duties owed to Plaintiffs and Class Members, their Private Information and other data would not have been released, disclosed, and disseminated without their authorization.

177.    Plaintiffs' and Class Members' Private Information and other data was transferred, sold, opened, viewed, mined and otherwise released, disclosed, and disseminated to unauthorized persons without their authorization as the direct and proximate result of Kaiser's failure to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiffs' and Class Members' Private Information and other data.

178.    As a direct and proximate result of Kaiser's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs and Class Members have suffered, and will continue to suffer, ongoing, imminent,

and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and noneconomic harm.

179.    Kaiser's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused this Data Breach constitute negligence.

180.    Plaintiffs are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

181.    Plaintiffs are also entitled to injunctive relief requiring Kaiser to, e.g., (i) strengthen its data security programs and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide robust and adequate credit monitoring to all Class Members, and any other relief this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**(NEGLIGENCE PER SE)**
**(Against Defendant Kaiser)**

182.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

183.    Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Kaiser had a duty to provide fair and adequate computer systems and data security to safeguard the personal and financial information of Plaintiffs and Class Members.

184.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Kaiser, of failing to use reasonable measures to protect the Private Information and other data of Plaintiffs and Class Members. The pertinent FTC publications and orders form part of the basis of Kaiser's duty in this regard.

39

185.    Kaiser required, gathered, and stored personal and financial information of Plaintiffs and Class Members to fulfill its contracts with the various and several health care providers.

186.    Kaiser violated the FTCA by failing to use reasonable measures to protect the Private Information and other data of Plaintiffs and Class Members and by not complying with applicable industry standards, as described herein.

187.    Plaintiffs and Class Members are within the class of persons that the FTC Act was intended to protect.

188.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

189.    As a direct and proximate result of Kaiser's negligence per se, Plaintiffs and Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering unemployment benefits; potentially defending themselves from legal action base upon fraudulent applications for unemployment benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

190.    Kaiser's violation of the FTCA constitutes negligence per se.

191.    For the same reasons and upon the same bases, Kaiser's violation of the CMIA, UCL, and various other State and local statutes, constitutes negligence per se.

192.    As a direct and proximate result of Kaiser's violation of the foregoing statutes and regulations, Plaintiffs and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**Violation of Common Law Invasion of Privacy – Intrusion Upon Seclusion**
**(Against Defendants Google and Meta)**

193.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

194.    Plaintiffs asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a place, conversation, or matter as to which Plaintiffs have a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

195.    Google and Meta's surreptitious interception, storage, and use of Plaintiffs' and Class members' interactions and communications with the Kaiser Platform, including PII, health information, and prescription requests, constitutes an intentional intrusion upon Plaintiffs' and Class members' solitude or seclusion.

196.    Plaintiffs and Class members expected this information to remain private and confidential given the nature of the Kaiser Platform, which is primarily used to receive medical advice, treatment, and prescriptions.

197.    This expectation is especially heightened given Kaiser's consistent representations that this data would remain confidential. Plaintiffs and Class members did not expect third parties, and specifically Google and Meta, to secretly intercept this information and their communications.

198.    Plaintiffs and Class members did not consent to, authorize, or know about Google and Meta's intrusion at time it occurred. Plaintiffs and Class members never agreed that Google and Meta could intercept, store, and use this data.

199.    Google and Meta's intentional intrusion on Plaintiffs' and Class members' solitude or seclusion would be highly offensive to a reasonable person. Plaintiffs and Class members reasonably expected, based on Kaiser's repeated assurances, that their information would not be collected by Google and Meta.

200.    The surreptitious taking and interception of sensitive data, including PII and medical information, from millions of individuals was highly offensive because it violated

41

expectations of privacy that have been established by social norms. Privacy polls and studies show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is collected or shared.

201.    The offensiveness of this conduct is all the more apparent because Google and Meta's interception, storage, and use of this information was conducted inconspicuously in a manner that Plaintiffs and Class members would be unable to detect and was contrary to the actual representations made by Kaiser.

202.    Given the highly sensitive nature of the data that Google and Meta intercepted, such as private details about medications and health information, this kind of intrusion would be (and in fact is) highly offensive to a reasonable person.

203.    As a result of Google and Meta's actions, Plaintiffs and Class members have suffered harm and injury, including, but not limited to, an invasion of their privacy rights.

204.    Plaintiffs and Class members have been damaged as a direct and proximate result of Google and Meta's invasion of their privacy and are entitled to just compensation, including monetary damages.

205.    Plaintiffs and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and Class members for the harm to their privacy interests as well as a disgorgement of profits made by Google and Meta as a result of its intrusions upon Plaintiffs' and Class members' privacy.

206.    Plaintiffs and Class members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Google and Meta's actions, directed at injuring Plaintiffs and Class members in conscious disregard of their rights. Such damages are needed to deter Google and Meta from engaging in such conduct in the future.

207.    Plaintiffs also seek such other relief as the Court may deem just and proper.

## SIXTH CAUSE OF ACTION
### Violation of CIPA, Cal. Penal Code § 631
### (Against Defendants Google and Meta)

208.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

42

209.    The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq. ("CIPA") finding that "advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id.* § 630. Thus, the intent behind CIPA is "to protect the right of privacy of the people of this state." *Id.*

210.    Cal. Penal Code § 631 imposes liability on any person who "by means of any machine, instrument, contrivance, or in any other manner" (1) "intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument," (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [the state of California]," (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained," or (4) "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

211.    Defendants Google and Meta are persons for purposes of § 631.

212.    Defendants Meta and Google maintain their principal places of business in California, where they designed, contrived, agreed, conspired, effectuated, and/or received the interception and use of the contents of Plaintiffs' and Class members' communications. Additionally, Meta has adopted California substantive law to govern their relationship with users.

213.    Meta and Google's software, Plaintiffs' and Class members' browsers and mobile applications, and Plaintiffs' and Class members' computing and mobile devices are a "machine, instrument, contrivance, or . . . other manner."

214.    At all relevant times, Meta, and Google, using their software, intentionally tapped or made unauthorized connections with, the lines of internet communication between

Plaintiffs and Class members and the Kaiser Platform without the consent of all parties to the communication.

215.    Meta and Google willfully and without the consent of Plaintiffs and Class members, reads or attempt to reads, or learn the contents or meaning of Plaintiffs' and Class members' communications to Kaiser while the communications are in transit or passing over any wire, line or cable, or were being received at any place within California when it intercepted Plaintiffs' and Class members' communications and data with Kaiser, who is headquartered in California, in real time.

216.    Google and Meta used or attempted to use the communications and information they received through their technology, including to supply analytics and advertising services.

217.    The interception of Plaintiffs' and Class members' communications was without authorization and consent from the Plaintiffs and Class members. Accordingly, the interception was unlawful and tortious.

218.    Plaintiffs and the Class members seek statutory damages in accordance with § 637.2(a), which provides for the greater of: (1) $5,000 per violation; or (2) three times the amount of damages sustained by Plaintiffs and the Class in an amount to be proven at trial, as well as injunctive or other equitable relief.

219.    Plaintiffs and Class members have also suffered irreparable injury from these unauthorized acts. Plaintiffs' and Class members' sensitive data has been collected, viewed, accessed, and stored by Google and Meta, has not been destroyed, and due to the continuing threat of such injury, Plaintiffs and Class members have no adequate remedy at law, Plaintiffs and Class members are entitled to injunctive relief.

**SEVENTH CAUSE OF ACTION**
**Violation of CIPA, Cal. Penal Code § 632**
**(Against Defendants Google and Meta)**

220.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

44

221.    Cal. Penal Code § 632 prohibits "intentionally and without the consent of all parties to a confidential communication," the "use[] [of] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication[.]"

222.    Section 632 defines "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto[.]"

223.    Plaintiffs' and Class members' communications to Kaiser, including their sensitive medical information including information concerning medications they were taking or were prescribed, their medical histories, allergies, and answers to other health-related questions, were confidential communications for purposes of § 632, including because Plaintiffs and Class members had an objectively reasonable expectation of privacy in this data.

224.    Plaintiffs and Class members expected their communications to Kaiser to be confined to Kaiser, in part because of Kaiser's consistent representations that these communications would remain confidential. Plaintiffs and Class members did not expect third parties, and specifically Google and Meta, to secretly eavesdrop upon or record this information and their communications.

225.    Google and Meta's software are all electronic amplifying or recording devices for purposes of § 632.

226.    By contemporaneously intercepting and recording Plaintiffs' and Class members' confidential communications to Kaiser through the Google and Meta's software, Google and Meta eavesdropped and/or recorded confidential communications through an electronic amplifying or recording device in violation of § 632 of CIPA.

227.    At no time did Plaintiffs or Class members consent to Defendants' conduct, nor could they reasonably expect that their communications to Kaiser would be overheard or recorded by Google and Meta.

228.    Kaiser and Meta utilized Plaintiffs' and Class members' sensitive medical information for their own purposes, including advertising and analytics.

229.     Plaintiffs and Class members seek statutory damages in accordance with § 637.2(a) which provides for the greater of: (1) $5,000 per violation; or (2) three times the amount of damages sustained by Plaintiffs and the Class in an amount to be proven at trial, as well as injunctive or other equitable relief.

230.     Plaintiffs and Class members have also suffered irreparable injury from these unauthorized acts. Plaintiffs' and Class members' sensitive data has been collected, viewed, accessed, and stored by Google and Meta, has not been destroyed, and due to the continuing threat of such injury, Plaintiffs and Class members have no adequate remedy at law, Plaintiffs and Class members are entitled to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court to grant Plaintiffs and the Class members the following relief against Defendants:

a.     An order certifying this action as a class action under Code of Civil Procedure §382, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

b.     A judgment in favor of Plaintiffs and the Class awarding them appropriate monetary relief, including actual and statutory damages, including statutory damages under the CIPA, CMIA, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c.     An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein, including, but not limited to:

      i.     Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

      ii.     Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

46

iii.    Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

iv.    Ordering that Defendants' segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

v.    Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

vi.    Ordering that Defendants conduct regular database scanning and securing checks;

vii.    Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain an unauthorized release when it occurs and what to do in response to an unauthorized release; and

viii.    Ordering Defendants to meaningfully educate its current, former, and prospective employees and subcontractors about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps they must take to protect themselves.;

d.    An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.    Restitutionary disgorgement of all wrongly acquired monies received by Defendants from the sale of the medical information of Plaintiffs and the Class Members, including monies directly received from advertisers;

f.    A judgment in favor of Plaintiffs and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, including the UCL, Cal. Bus. & Prof. Code § 17082 and the CMIA, Cal. Civ. Code 56.35; and

g.    An award of such other and further relief as this Court may deem just and proper.

1

**POTTER HANDY LLP**

2

3    Dated: June 10, 2024          By:    _____/s/ James M. Treglio_____

4                                           Mark D. Potter, Esq.
                                           James M. Treglio, Esq.
5                                           Attorneys for the Plaintiffs and the Class

6

7

8                            <u>**DEMAND FOR JURY TRIAL**</u>

9        Plaintiffs and the Class hereby demand a jury trial on all causes of action and claims with

10   respect to which they have a right to jury trial.

11                          **POTTER HANDY LLP**

12

13   Dated: June 9, 2024           By:    _____/s/ James M. Treglio_____

14                                          Mark D. Potter, Esq.
                                           James M. Treglio, Esq.
15                                          Attorneys for the Plaintiffs and the Class

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Class Action Complaint

# EXHIBIT D

# EXHIBIT D

**SUM-100**

# SUMMONS FOR FIRST AMENDED COMPLAINT
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation;
META PLATFORMS, INC., a Delaware Corporation; GOOGLE LLC, a Delaware
Limited Liability Company; and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

CHRISTOPHER NEWTON,  CHRISTA VITAL, SCOTT
SCHUTZA, on behalf of themselves and all others similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  Alameda Superior Court | CASE NUMBER:<br>*(Número del Caso):*  **24CV073453** |

Hayward Hall of Justice, 24405 Amador Street, Hayward, CA 94544

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
 James M. Treglio; Potter Handy, LLP; 100 Pine St., Ste 1250, San Francisco, CA 94111; (415) 534-1911

| | | |
|---|---|---|
| DATE:<br>*(Fecha)* | Clerk, by<br>*(Secretario)* _____ | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify ):*
   (1) KAISER FOUNDATION HEALTH PLAN, INC.;
   (2) META PLATFORMS, INC.; and
   (3) GOOGLE LLC
   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

1
2

**PROOF OF SERVICE**

Newton, et al. v. Kaiser Foundation Health Plan, Inc., et al.
(Case No.: **24CV073453**)

3
4
5

I, the undersigned, am over the age of eighteen years and am resident of San Diego County,
California; I am not a party to the above-entitled action; my business address is 100 Pine St., Ste
1250, San Francisco, CA 94111.

6

On June 9, 2024, I served the following document(s):

7

1.  First Amended Class Action Complaint
2.  Summons for First Amended Class Action Complaint

8
9

Addressed to:

10
11
12
13

SheppardMullin
Wynter L. Deagle, Esq.
WDeagle@sheppardmullin.com
Kari Rollins, Esq.
krollins@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130-4092

14
15
16
17
18
19

o   BY USPS MAIL: I caused such envelope with postage thereon fully prepaid to be
    placed in the United States mail at San Diego, California.
o   BY FACSIMILE: In addition to the service by mail as set forth above, I forwarded a
    copy of said documents via facsimile to the listed facsimile number.
o   BY OVERNITE EXPRESS: I caused such envelope with postage thereon fully prepaid
    to be placed in the Designated Overnite Express drop box at San Diego, California.
o   BY PERSONAL SERVICE: I caused said documents to be personally served on all
    listed recipients via Ace Attorney Services.
X   BY ELECTRONIC MAIL TRANSMISSION: I caused the listed documents to be
    electronically filed and subsequently emailed to the recipient(s).

20
21

Executed on June 10, 2024 from San Diego, California.

22

I declare under penalty of perjury under the laws of the State of California that the above is true
and correct.

23
24
25

/s/ James M. Treglio

_____
James M. Treglio

26
27
28

49

First Amended Class Action Complaint

# EXHIBIT E

# EXHIBIT E

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| James M. Treglio (SBN 228077)<br>Potter Handy, LLP<br>100 Pine St., Ste 1250, San Francisco, CA 94111<br>TELEPHONE NO.: (415) 534-1911  FAX NO. : 888-422-5191<br>EMAIL ADDRESS: jimt@potterhandy.com<br>ATTORNEY FOR (Name): Plaintiffs, Christopher Newton, Christa Vital, Scott Shutza | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>04/29/2024 at 08:22:05 PM<br>By: Damaree Franklin,<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ALAMEDA**
STREET ADDRESS: 24405 Amador Street,
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, CA 94544
BRANCH NAME: Hayward Hall of Justice.

CASE NAME: Newton, et al., v. Kaiser Foundation Health Plan, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 24CV073453 |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $35,000) | [ ] Limited<br>(Amount<br>demanded is<br>$35,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE: Hon. Noel Wise<br>DEPT.: 21 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

2. This case [x] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 4 - CMIA, UCL, negligence, negligence per se
5. This case [x] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: April 29, 2024

James M. Treglio                    ▶              /s/ James M. Treglio
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

CM-010 [Rev. Janutry 1, 2024]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior Court of California, County of Alameda*

| Short Title: | Case Number: |
|---|---|
| Newton, et al. v. Kaiser Foundation Health Plan, Inc. , et al. | 24CV073453 |

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW <u>UNLIMITED</u> CIVIL CASE FILINGS IN THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

[ ] Oakland, Rene C. Davidson Alameda County Courthouse  (446)

[ x ] Hayward Hall of Justice  (447)

[ ] Pleasanton, Gale-Schenone Hall of Justice  (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | **Is this an uninsured motorist case?  [ ] yes  [ ] no** | | |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (<u>not</u> asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [X] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial    **Is the deft. in possession** |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential    **of the property?** |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs    **[ ] Yes   [ ] No** |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq)  [ ] Yes   [ ] No** | | |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

| **SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/29/2024<br>Chad Fike, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>D. Franklin |
| PLAINTIFF:<br>CHRISTOPHER NEWTON  et al | |
| DEFENDANT:<br>KAISER FOUNDATION HEALTH PLAN, INC., a California Corpora | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>24CV073453 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

| | |
|---|---|
| Date: 08/27/2024     Time: 8:30 AM     Dept.: 21 | |
| Location: Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | |

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer,** in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Rene C. Davidson Courthouse 1225 Fallon Street, Oakland, CA 94612 | **FILED** Superior Court of California County of Alameda 04/29/2024 Chad Finke, Executive Officer / Clerk of the Court By: _____ Deputy D. Franklin |
| PLAINTIFF/PETITIONER: CHRISTOPHER NEWTON  et al | |
| DEFENDANT/RESPONDENT: KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation | |
| **CERTIFICATE OF MAILING** | CASE NUMBER: 24CV073453 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

James Michael Treglio
Potter Handy LLP
100 Pine St., Ste. 1250
San Francisco, CA 94111

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/29/2024                    By:

D. Franklin, Deputy Clerk

**CERTIFICATE OF MAILING**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse, Department 21

## JUDICIAL OFFICER: HONORABLE NOËL WISE

Courtroom Clerk: Nicole Hall                                   CSR: None

---

**24CV073453**                                               June 4, 2024
                                                              2:30 PM
**NEWTON, et al.**
  **vs**
**KAISER FOUNDATION HEALTH PLAN, INC., A**
**CALIFORNIA CORPORATION**

---

## MINUTES

**APPEARANCES:**

**NATURE OF PROCEEDINGS: Complex Determination Hearing filed by
CHRISTOPHER NEWTON (Plaintiff); CHRISTA VITAL (Plaintiff); SCOTT SCHUTZA
(Plaintiff) on 04/29/2024**

COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules
of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning
complex litigation, including Rule 3.250 et seq. An order assigning the case to a judge and an
initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the
action but has not paid the complex case fee is required to pay the fee within ten days of the
filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs
appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other
adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse
parties. All payments must identify on whose behalf the fee is submitted. Please submit payment
to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C.
Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to
the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local
Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code
section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Alameda Superior Court, within 10 days of service of this order.

Order has been filed.

The Initial Case Management Conference scheduled for 08/27/2024 is continued to 04/21/2025 at 01:30 PM in Department 21 at Rene C. Davidson Courthouse .

Plaintiff must file a motion for class certification prior to the April 21, 2025 hearing.

The parties shall, no later than 15 calendar days before the next case management hearing, file a joint case management statement on pleading paper.

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

*Nicole Hall*

By:   N. Hall, Deputy Clerk
        Minutes of: 06/04/2024
        Entered on: 06/04/2024

**FILED**
Superior Court of California
County of Alameda

06/04/2024

Chad Finke, Executive Officer/Clerk of the Court
By: _Nicole Hall_ Deputy
N. Hall

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

| | |
|---|---|
| ,<br><br>Plaintiffs | Case No.<br><br>INITIAL CASE MANAGEMENT<br>ORDER |
| ,<br><br>Defendants | ASSIGNED FOR ALL PRE-TRIAL<br>PURPOSES TO:<br>JUDGE NOËL WISE<br>DEPARTMENT 21 |
| | |

The following order shall apply to all parties in this action:

<u>CASE MANAGEMENT CONFERENCES</u>

At Case Management Conferences (CMCs), the Court will address discovery issues, schedules, and other subjects pursuant to CRC 3.750.  Counsel attending CMCs must be thoroughly familiar with the case.  The Court permits remote CMC appearances by video conference.  Parties are to meet and confer in advance of the CMC regarding the form of their appearance.  The Court prefers all speaking participants for all parties to participate from the same platform, i.e., all speaking participants should be prepared to attend either by videoconference or in person.  (The Court does not have a preference re the manner of attendance of non-speaking participants.)

At the Initial CMC, the parties must be prepared to discuss the nature of the case, both factually and legally, as well as the projected management of the case at each stage, including the prospective use of lead counsel and a common complaint.  The CMC is not

1

a perfunctory hearing. The primary objective of the CMC is to develop a comprehensive plan for a just and efficient determination of the litigation.

Courtesy copies of all CMC statements must be emailed to dept21@alameda.courts.ca.gov and must also be delivered in hard copy directly to Dept. 21 if they exceed five pages. The filing and delivery date is not later than fifteen (15) days before the CMC unless otherwise directed.

The Parties shall prepare and file a joint CMC statement, prepared in narrative form (not using Form CM-110), after counsel have met and conferred in person or via telephone or videoconference as required by CRC 3.724. Written or emailed exchanges do not meet the Court's good faith meet and confer requirements.

Initial CMC statements must address the following issues when applicable:

A.  A brief factual summary to assist the Court in understanding the background of the case, a statement of the issues presented, including each theory of liability and defense and a summary of the facts supporting each position taken, and the relief sought, including an estimate of damages.

B.  The number of parties and their posture, including a proposed structure of representation (e.g., liaison/lead counsel or by committee);

C.  Deadlines and limits on joinder of parties and amended or additional pleadings;

D.  Class discovery and class certification, if applicable;

E.  A proposed schedule for the conduct of the litigation including, but not limited to a discovery plan, a plan for hearing remaining law and motion, proposed

mediation dates, projected dates for filing motions for class certification (if applicable), and trial;

F.  An identification of all potential evidentiary issues involving confidentiality or protected evidence and/or agreement re a related protective order;

G.  A detailed description of the procedural posture of the case, describing any outstanding procedural problems, including, but not limited to:

(1)  unserved parties and the reasons for the failure to serve;

(2)  unserved and/or unfiled cross-complaints;

(3)  related actions pending in any jurisdiction and the potential for coordination or consolidation;

(4)  any possible jurisdictional or venue issues that may arise;

(5)  the status of discovery, including a description of all anticipated discovery and incomplete or disputed discovery issues;

(6)  unresolved law and motion matters;

(7)  requests for, or opposition to, any ADR proceedings, including but not limited to mediation, judicial or contractual arbitration;

(8)  severance or bifurcation of issues for trial; and

(9)  calendar conflicts for any attorney, witness, or party, and any other matter which may affect the setting of a trial date.

H.  Counsel may make suggestions for streamlining the litigation, including, but not limited to, a master file system, common complaints and/or answers, designation of lead counsel [for plaintiff(s) and/or defendant(s)] to streamline service of process and/or management of discovery, the use of e-filing, and

the use of a web-page maintained by lead counsel for the purpose of posting

the litigation schedule and agenda. Counsel may also address ways of

structuring the trial of the action such as bifurcation, severance, bell-weather

trials, use of special masters, use of expedited jury procedures and/or waiver

of jury.

I.  If the action is a Judicial Council Coordinated Proceeding (JCCP), the initial

CMC statement must also include a list of cases that the parties agree should

be coordinated within the JCCP.  The list may be supplemented in later CMC

statements as additional cases are added to the JCCP through stipulation or

otherwise. (CRC 3.544.)

Parties are advised to check the Court's register of actions before appearing at any

CMC, including the Initial Case Management Conference, to determine if the Court has

issued an order, or a tentative case management order.  The Court will endeavor to issue

tentative case management orders (TCMOs) at least two days before the CMC.  If a

TCMO is published, it will become the order of the Court unless counsel or self-

represented party notifies the Court and opposing counsel/self-represented party by email

and through eCourt prior to 3:00 p.m. the court day before the CMC that they wish to

appear at the CMC to discuss or contest some aspect of the order.  Parties may not contest

a TCMO until they have met and conferred in good faith and in person (or via video or

telephone conference) concerning the potential areas of dispute or discussion.  If

subsequent agreement is not reached, the request to appear sent to the Court must, in a

non-argumentative manner, succinctly detail the meet and confer efforts, the topics the

parties wish to discuss, and the parties' respective positions. (Please note that the

Tentative Rulings posted on the website are for tentative rulings on law and motion matters and will not display TCMOs. The TCMOs are found in the Register of Action.) Department 21 may be reached at Dept21@alameda.courts.ca.gov.

MOTIONS FOR CLASS CERTIFICATION

Plaintiffs are expected to file their motion for class certification no later than 13 months after filing the complaint. Parties are to include related updates in their initial and supplemental CMC statements.

NOTICE OF FEE CHANGES - JURY TRIAL FEE

The advance jury fee is fixed at $150.00 and is not refundable. With certain exceptions, the jury trial fee is due on or before the date scheduled for the initial case management conference. (C.C.P. § 631(b).)

DISCOVERY

Discovery Conference: Motions related to discovery (i.e. motions to compel, protective orders etc.) may not be filed without leave of the Court until after an informal discovery conference pursuant to revised Local Rule 3.31 (amended effective January 1, 2023). A party may request an IDC by joint email to dept21@alameda.courts.ca.gov. Any IDC request must include a succinct, non-argumentative narration of the parties' good faith meet and confer efforts (in person, or via video or telephone conference), and the remaining areas of disagreement. The IDC is not a pro forma step before a motion. Parties are to continue their in person meet and confer efforts after the submission of their IDC statements. Parties are to email the Court with their request to withdraw the IDC or narrow the issues to be discussed prior to 9:00 a.m. on the date of the IDC.

EMAILS TO COURT

Emails to the Court are not part of the Court record in this case and may be deleted without notice.  Email is not a substitute for required filings. Any emails should be copied to all counsel. The Department 21 email may only be used for the following purposes: to seek a reservation to schedule a proceeding on the Court's calendar, to give notice that a settlement has been reached, to request that a motion be withdrawn, to request an IDC (and transmit IDC statements), to notify the Court of emergency scheduling issues (i.e. running late to a hearing), to contest a tentative ruling, to reply to an inquiry from the clerk or research attorney of Department 21, to communicate with the courtroom clerk regarding department 21 procedures (that are not otherwise addressed in this order, the local rules, or on the Department or Court web site), to deliver courtesy copies fewer than 5 pages in length (including all attachments), or to communicate re other matters that the Court has expressly authorized in this case.

If any email communications to the Court include ex parte communications, attempt to argue issues not properly noticed, or are rude or unprofessional, then the clerk will not pass on the communication to the Court, and it will not be considered.  However, improper communications may be the subject of sanctions ordered sua sponte by the Court, or after consideration of a noticed motion.  The Court may also sua sponte file in the register of action any email communications transmitted to the Court by a party or counsel.

<u>PRO HAC VICE PROCESS</u>

Applications for Pro Hac Vice must be submitted by noticed motion on regular time, or, if it is a time sensitive matter, a request for an order shortening time must be submitted.  Applications will not be considered on an ex parte basis.  (CRC 9.40.)

## NOTICE

Parties are advised that CASE MANAGEMENT ORDERS, including trial setting orders, and FINAL RULINGS ON LAW AND MOTION that are issued by Dept. 21 will be published in the Court's website in the Register of Action for this case.  The clerk of the Court WILL NOT serve each party a copy of future orders.  Unless otherwise ordered, counsel must obtain copies of all future orders from the Register of Action in this case.

## SERVICE OF THIS ORDER

Counsel for plaintiff(s) has a continuing obligation to serve a copy of this order on newly joined parties not listed on the proof of service of this order and file proof of service. Each party defendant joining any third-party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service. The Court directs the clerk to serve a copy of this CASE MANAGEMENT ORDER upon counsel for Plaintiff(s).

DATED:  06/04/2024

_____

NOËL WISE, JUDGE
**Noël Wise / Judge**

_____

### CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addresses shown below, and that the

mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed: 06/04/2024

Nicole Hall
Courtroom Clerk, Dept. 21

N. Hall, Deputy Clerk

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>06/04/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Nicole Hall_ Deputy<br>N. Hall |
| PLAINTIFF/PETITIONER:<br>CHRISTOPHER NEWTON  et al | |
| DEFENDANT/RESPONDENT:<br>KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV073453 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Initial Case Management Conference Order entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

James Michael Treglio
Potter Handy LLP
jimt@potterhandy.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 06/04/2024                    By:

_Nicole Hall_

N. Hall, Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse

| | |
|---|---|
| CHRISTOPHER NEWTON  et al<br>                    Plaintiff/Petitioner(s)<br>              vs.<br>KAISER FOUNDATION<br>HEALTH PLAN, INC., a<br>California Corporation<br>                    Defendant/Respondent<br>(s) | No.      24CV073453<br><br>Date:    06/04/2024<br>Time:    2:30 PM<br>Dept:    21<br>Judge:   Noël Wise<br><br>ORDER re: Complex Determination<br>Hearing filed by<br>CHRISTOPHER NEWTON<br>(Plaintiff); CHRISTA VITAL<br>(Plaintiff); SCOTT<br>SCHUTZA (Plaintiff) on<br>04/29/2024 |

COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to a judge and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)

PROCEDURES

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Alameda Superior Court, within 10 days of service of this order.

Order has been filed.

The Initial Case Management Conference scheduled for 08/27/2024 is continued to 04/21/2025 at 01:30 PM in Department 21 at Rene C. Davidson Courthouse .

Plaintiff must file a motion for class certification prior to the April 21, 2025 hearing.

The parties shall, no later than 15 calendar days before the next case management hearing, file a joint case management statement on pleading paper.

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

Dated :  06/04/2024

Noel Wise / Judge

---

ORDER re: Complex Determination Hearing filed by CHRISTOPHER NEWTON (Plaintiff); CHRISTA VITAL (Plaintiff); SCOTT SCHUTZA (Plaintiff) on 04/29/2024

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

ORDER re: Complex Determination Hearing filed by CHRISTOPHER
NEWTON (Plaintiff); CHRISTA VITAL (Plaintiff); SCOTT
SCHUTZA (Plaintiff) on 04/29/2024

Page 3 of 3

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

| | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>06/04/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Nicole Hall_ Deputy<br>N. Hall |
| PLAINTIFF/PETITIONER:<br>CHRISTOPHER NEWTON  et al | |
| DEFENDANT/RESPONDENT:<br>KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation | |

| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV073453 |
|---|---|

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Order re: Complex Determination Hearing filed by CHRISTOPHER NEWTON (Plaintiff); CHRISTA VITAL (Plaintiff); SCOTT SCHUTZA (Plaintiff) on 04/29/2024 entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

James Michael Treglio
Potter Handy LLP
jimt@potterhandy.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 06/04/2024

By:

_Nicole Hall_

N. Hall, Deputy Clerk

1

## PROOF OF SERVICE
Newton, et al. v. Kaiser Foundation Health Plan, Inc., et al.

2
(Case No.: **24CV073453**)

3

4
I, the undersigned, am over the age of eighteen years and am resident of San Diego County, California; I am not a party to the above-entitled action; my business address is 100 Pine St., Ste 1250, San Francisco, CA 94111.

5

6
On June 4, 2024, I served the following document(s):

7
    **1.**  Initial Case Management Conference Order; and
    **2.**  Order re: Complex Determination Hearing.

8

9
Addressed to:

10
SheppardMullin
Wynter L. Deagle, Esq.

11
WDeagle@sheppardmullin.com
12275 El Camino Real, Suite 100

12
San Diego,  CA 92130-4092

13
  o  BY USPS MAIL: I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at San Diego, California.

14
  o  BY FACSIMILE: In addition to the service by mail as set forth above, I forwarded a copy of said documents via facsimile to the listed facsimile number.

15

16
  o  BY OVERNITE EXPRESS: I caused such envelope with postage thereon fully prepaid to be placed in the Designated Overnite Express drop box at San Diego, California.

17
  o  BY PERSONAL SERVICE: I caused said documents to be personally served on all listed recipients via Ace Attorney Services.

18
  X  BY ELECTRONIC MAIL TRANSMISSION: I caused the listed documents to be electronically filed and subsequently emailed to the recipient(s).

19
Executed on June 4, 2024 from San Diego, California.

20

21
I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

22
                /s/ James M. Treglio

23
                _____

24
                  James M. Treglio

25

26

27

28

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
06/04/2024 at 10:13:15 PM
By: Carrie Thao,
Deputy Clerk

**POTTER HANDY LLP**
James M. Treglio (SBN 228077)
jimt@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Tel: (415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiff

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ALAMEDA

| | |
|---|---|
| CHRISTOPHER NEWTON, CHRISTA VITAL, SCOTT SCHUTZA on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation; and DOES 1 through 100, inclusive,<br><br>     Defendants. | Case No. **24CV073453**<br><br>**PROOF OF SERVICE** |

  Please take notice that Plaintiff hereby submits the Proof of Service of the Initial Case Management Conference Order and Order re: Complex Determination Hearing unto Kaiser Foundation Health Plan, Inc. Email service was effectuated on June 4, 2024. A copy of the Proof of Service is attached hereto.

Dated: June 4, 2024

        POTTER HANDY LLP
        By:  /s/ James M. Treglio
          James M. Treglio
          Attorney for Plaintiff

1

**Proof of Service**

1

2

### PROOF OF SERVICE
Newton, et al. v. Kaiser Foundation Health Plan, Inc., et al.
(Case No.: **24CV073453**)

3

4

I, the undersigned, am over the age of eighteen years and am resident of San Diego County, California; I am not a party to the above-entitled action; my business address is 100 Pine St., Ste 1250, San Francisco, CA 94111.

5

6

On June 4, 2024, I served the following document(s):

7

    **1.**  Initial Case Management Conference Order; and
    **2.**  Order re: Complex Determination Hearing.

8

9

Addressed to:

10

SheppardMullin
Wynter L. Deagle, Esq.
WDeagle@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego,  CA 92130-4092

11

12

13

  o  BY USPS MAIL: I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at San Diego, California.

14

  o  BY FACSIMILE: In addition to the service by mail as set forth above, I forwarded a copy of said documents via facsimile to the listed facsimile number.

15

16

  o  BY OVERNITE EXPRESS: I caused such envelope with postage thereon fully prepaid to be placed in the Designated Overnite Express drop box at San Diego, California.

17

  o  BY PERSONAL SERVICE: I caused said documents to be personally served on all listed recipients via Ace Attorney Services.

18

  X  BY ELECTRONIC MAIL TRANSMISSION: I caused the listed documents to be electronically filed and subsequently emailed to the recipient(s).

19

20

Executed on June 4, 2024 from San Diego, California.

21

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

22

                                             /s/ James M. Treglio

23

                                        _____

                                           James M. Treglio

24

25

26

27

28

JS-CAND 44 (Rev. 10/2020)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CHRISTOPHER NEWTON, CHRISTA VITAL, SCOTT SCHUTZA on behalf of themselves and all others similarly situated

**(b)** County of Residence of First Listed Plaintiff  Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** *(Firm Name, Address, and Telephone Number)*
Mark D. Potter (SBN 166317); James M. Treglio (SBN 228077)
POTTER HANDY LLP
100 Pine St., Ste. 1250, San Francisco, CA 94111
Tel: 415.534.1911 Fax: 888.422.5191
mark@potterhandy.com; jimt@potterhandy.com

## DEFENDANTS

KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation; META PLATFORMS INC., a Delaware Corporation; GOOGLE LLC, a Delaware Limited Liability Company, and DOES 1 through 100, inclusive,
County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.
Attorneys *(If Known)*
Wynter L. Deagle, SBN 296501
Sheppard, Mullin, Richter & Hampton LLP
12275 El Camino Real, Ste 100, San Diego, CA 92130
Tel: 858.720.8900 Fax: 858.509.3691
wdeagle@sheppardmullin.com

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC § 881 | ☐ 422 Appeal 28 USC § 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC § 157 | ☐ 376 Qui Tam (31 USC § 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | **LABOR** | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal | ☐ 710 Fair Labor Standards Act | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment Of Veteran's Benefits | ☐ 330 Federal Employers' Liability | Injury Product Liability | ☐ 720 Labor/Management Relations | ☐ 830 Patent | ☐ 430 Banks and Banking |
| | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 740 Railway Labor Act | ☐ 835 Patent–Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 751 Family and Medical Leave Act | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 790 Other Labor Litigation | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 791 Employee Retirement Income Security Act | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☒ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury -Medical Malpractice | ☐ 385 Property Damage Product Liability | | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | | | **IMMIGRATION** | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 462 Naturalization Application | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 465 Other Immigration Actions | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | ☐ 440 Other Civil Rights | **HABEAS CORPUS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS–Third Party 26 USC § 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 445 Amer. w/Disabilities– Employment | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 446 Amer. w/Disabilities–Other | **OTHER** | | | |
| ☐ 290 All Other Real Property | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee– Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original Proceeding
☒ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from Another District *(specify)*
☐ 6  Multidistrict Litigation–Transfer
☐ 7  Multidistrict Litigation–Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1331, 1332, 1441, 1446
Brief description of cause:
Causes of Action (1) under the California CMIA, Civil Code §§ 56, et seq; (2) under California UCL, Cal Bus, & Prof. Code § 17200, et seq; (3) claims for negligence; (4) claims for negligence per se; (5) under common law invasion of privacy—intrusion upon seclusion; (6) under California Penal Code § 631; and (7) under California Penal Code § 632.

## VII.  REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, Fed. R. Civ. P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:

JUDGE

DOCKET NUMBER

## IX.  DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*

☒ SAN FRANCISCO/OAKLAND      ☐ SAN JOSE      ☐ EUREKA-MCKINLEYVILLE

DATE June 14, 2024          **SIGNATURE OF ATTORNEY OF RECORD** /s/ Wynter L. Deagle